[No. 23716. Department One. August 10, 1932.]

L. A. WINNER, *Appellant,* v. FRANK S. CARROLL,
*Respondent,* EMMETT R. CARROLL,
*Intervener-Respondent.*[1]

*Arthur G. Cohen* and *Maurice H. Cooperman*
*(Perry R. Gershon,* of counsel), for appellant.

*Lester E. Pope,* for respondents.

*Tanner & Garvin, Amici Curiae.*

[1]Reported in 13 P. (2d) 450.

STEINERT, J.—This action was brought by the plaintiff to recover damages for loss of a portion of the estate of his deceased brother, Noble G. W. Winner, to which plaintiff claims to be entitled. His amended complaint presents two causes of action, pleaded in the alternative. The first cause of action is drawn upon the theory that, by the will of the deceased, if it be held valid, he is entitled to the sum of four hundred dollars therein bequeathed to him. The second cause of action is drawn upon the theory that, if the will be held invalid, then he is entitled, as an heir of the deceased, to a one-third distributive share of the estate, such share approximating four thousand dollars.

Service upon the defendant was obtained by publication, following the levy of a writ of attachment upon certain real estate in King county, Washington, standing in the name of the defendant. The intervener appeared in the action, asserted ownership of, and title to, the real estate levied upon and asked that the attachment be dissolved. The defendant thereafter appeared generally. Issues were joined and, upon a hearing by the court without a jury, the entire action was dismissed. The plaintiff has appealed.

The facts are these: Noble G. W. Winner (to whom we shall hereinafter refer as Mr. Winner) died December 6, 1928, in San Francisco, California, the place of his residence. He left no widow or children. His nearest relatives are two brothers, L. A. Winner, the appellant, and Charles Winner, a resident of Montana, and two nephews, Frank S. Carroll, respondent, and Emmett R. Carroll, his brother, intervener. On November 5, 1927, Mr. Winner made a holographic will, the material parts of which read as follows:

"Fourth: I direct that my executor, hereinafter named, shall upon my death take immediate possession and assume charge and control of all my money and

personal effects, by this instrument, empowered and fully authorized to dispose of all money and personal effects as stated in this will:

"First: My brother Chas. H. Winner, Twenty-five Dollars, $25.00.

"Second: My brother Lester A. Winner, Four Hundred Dollars, $400.00.

"Third: My nephew, Emmett R. Carroll, Four Hundred Dollars.

"Fourth: My nephew Frank S. Carroll, the balance of the undersign's bank accounts after all doctors and funeral expenses are paid. My personal effects as follows . . .

"Fifth: I hereby appoint and nominate my nephew —Frank S. Carroll, to be my sole executor without bonds, either to qualify as such executor or to sell or dispose of any or all of my property.

"In Witness whereof I have hereunto set my hand this 5th day of November, 1927.

"(Signed) Noble G. W. Winner."

On October 27, 1927, Mr. Winner opened up a joint savings account in the University Mutual Savings Bank of Seattle, in the names of himself and the respondent, Frank S. Carroll. This was a transfer of a similar account in the same institution theretofore standing in the names of Mr. Winner and his sister, Mrs. M. J. Carroll, mother of the respondent. At the time of the transfer, the account showed a balance of $3,165.40. The card evidencing the opening of the account contained the following provisions:

"We, N. G. W. Winner and Frank S. Carroll, as depositors in the University Mutual Savings Bank, agree to the By-Laws and Regulations thereof. Withdrawals from this account may be made by either of us during the lifetime of both or by the survivor upon the death of one of us."

and bore the signatures of the two depositors. At the time of his death, Mr. Winner had withdrawn $1,055.65

.from this account. The balance remaining, including accrued dividends, was $3,300.

On October 30, 1927, Mr. Winner opened up a similar account in the Washington Mutual Savings Bank of Seattle, in the names of himself and the respondent. This account was likewise a transfer account, under similar conditions and with the same provisions as pertained to the University Mutual Savings Bank account. At the time of the transfer it showed a balance of $1,598.30. At the time of Mr. Winner's death, the account had increased to $1,671.03, with no withdrawals listed.

After Mr. Winner's death, the respondent closed both of the accounts by withdrawing the moneys. These moneys he has ever since retained and has made no accounting thereof. The will has never been presented for probate, either in California or in Washington. It is conceded by all parties that the property of Mr. Winner at the time of making the will, and also at the time of his death, consisted solely of the two bank accounts and some minor personal effects.

The trial court held that the will as executed by Mr. Winner, it having been offered and received in evidence, was in all respects a valid one, and with that holding we agree. Obviously, then, we are no longer concerned with appellant's second cause of action.

We have two problems before us in this case, one involving the construction of the terms of the will, and the other involving the construction of a statute with reference to joint deposits in mutual savings banks.

Under the first problem, it is the contention of the appellant that, by the terms of the will, the respondent took only the residue after the payment of the specific legacies, including appellant's, and the expenses incident to the last illness of Mr. Winner, deceased. He insists that his interpretation is the only one that can

be placed upon the language of the instrument, and that such interpretation must be manifest from even a casual reading of it. As an aid to his contention appellant relies upon certain correspondence passing between Mr. Winner and the two banks after the savings accounts had been opened. This correspondence indicates that Mr. Winner desired to reserve full control of these accounts during his lifetime, but that the balance remaining at the time of his death should be immediately paid to his nephew, the respondent, without any legal intervention. After receiving written explanation from each of the banks as to the legal effect of a joint account under their rules, Mr. Winner in a letter dated January 4, 1928 (Exhibit "X") wrote:

"I have lost enough with my own to Bros. to suit me. I wish to have it as it is now in a joint acct. as long as I live and then he [respondent] is to draw the balance if there is any left."

The appellant argues that the word "balance" in the fourth subdivision of the will must be construed to mean "rest and residue" or "remainder." He further contends that if there is any ambiguity attendant upon the use of the word "balance" then the court must, in construing the will, take into consideration all the surrounding circumstances existing at the time the will was executed.

■■ We do not agree with either of these contentions. In language as clear as language could express it, the testator bequeathed to the respondent the entire balance of his bank accounts after all doctors and funeral expenses had been paid. He did not designate the bequest as the balance or remainder of his estate or property, nor did he condition it upon the payment of the other bequests, but specifically indicated that the particular funds were to go to the respondent, subject only to the payment of certain named expenses. On

the other hand, the source of payment of the other money bequests was not specified by him.

It is true, as this court has frequently held, that the surrounding situation and circumstances may in a proper case be taken into consideration, in order to determine the intention of the testator, but that is only where the will itself does not clearly evidence such intention. Surrounding circumstances may be resorted to in order to dissipate an ambiguity, but not to create one, nor to make a new will for the testator. A fundamental rule, paramount to all others in this branch of the law, is that the testator's intention, as shown by the will itself, must govern.

"If the language used in the will expresses a definite unambiguous intention, the courts will not look to surrounding circumstances for the purpose of varying the intention which is thus expressed in the will. Under such circumstances the court will construe the will without reference to such additional facts." 1 Page on Wills (2d ed.) 1373-4.

Our own court has clearly drawn the distinction:

"It goes without saying that in this, as in every other case of construing a will, the supreme purpose is to ascertain the actual intent of the testator; and that should be ascertained, whenever possible, from the language of the will itself, unaided by extrinsic facts. Certain technical rules exist for the gathering of the intent of the testator from the will itself. Concurring with modern authority sustaining this rule as the proper solution of these complications, this court has committed itself to the doctrine by having announced in *Webster v. Thorndyke*, 11 Wash. 390, 39 Pac. 677, that 'if the intent of the testator can be gathered from the will, it is the duty of the court to see that such intention is given effect.' (Citing cases.) . . .

"The intention is to be gathered from the words used as covered by recognized rules, and in cases of doubt and ambiguity, from the situation and surround-

214

ing circumstances. (Citing cases.)'' *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 Pac. 6.

The language of the present will is plain. and unambiguous, and the intention of the testator,˙we think, is obvious. The extrinsic fact that, at the time of the execution of the will and also at the time of his death, Mr. Winner's property was limited practically to the two bank accounts, does not alter the situation. Not only was it possible for him to acquire other property before he died, but it was also possible for him to withdraw a portion of the savings accounts, and with it create a fund out of which the bequest to appellant might be paid. The evidence shows that he actually did withdraw $1,055.65 between the date of the opening of the accounts and the date of his death.

We conclude that appellant's bequest was not payable out of the proceeds of the bank accounts, and since there is no other estate the bequest fails entirely.

It is unnecessary to discuss appellant's case against the intervener, because if the case against the respondent fails, it, too, must fail.

██ Our conclusion thus far reached is sufficient to dispose of the entire case between the parties litigant, but inasmuch as a question of a somewhat public nature and importance is presented by the briefs, including that of *Amici Curiae,* we proceed to the second problem heretofore suggested. This involves the interpretation of the mutual savings bank act, particularly Laws of 1915, ch. 175, p. 567, § 19, subd. 2 (now ch. 123, Laws of 1929, p. 280, § 2), Rem. Comp. Stat., § 3348, subd. 2, which reads as follows:

"After any deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become

the property of such persons as joint tenants, and the same, together with all dividends thereon, shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to such savings bank for all payments made on account of such deposit prior to the receipt by such savings bank of notice in writing not to pay such deposit in accordance with the terms thereof. The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor.''

It will be noticed that this section brought back into the law of this state, in so far as concerns a particular species of property, the doctrine of survivorship as an element of joint tenancies, which doctrine had been abrogated in 1885 by an act entitled ''An Act to Abolish the Right of Survivorship in Estates held under Joint Tenancy.'' Rem. Comp. Stat., § 1344.

As to deposits made in mutual savings banks by a person in the names of himself and another person, and in form to be paid to either, or to the survivor of them, the statute specifically provides that such deposits ''shall become the property of such persons as joint tenants'' and ''may be paid to either during the lifetime of both or to the survivor after the death of one of them.'' A rule of property was thus announced. The statute went further, however, and announced, also, a conclusive rule of evidence. In the last paragraph of the section quoted it provides that the making of such deposit, in the absence of fraud or undue influence, shall be *conclusive evidence in any action or*

*proceeding to which either such savings bank or the surviving depositor is a party.*

Four states have been called to our attention as having identical or somewhat similar statutes upon this subject: New York, California, Michigan, and Minnesota. In each of them the statute has been sustained to its fullest extent and vigor.

In *Moskowitz v. Marrow,* decided in 1929, and reported in 251 N. Y. 380, 167 N. E. 506, 66 A. L. R. 870, the court held that a deposit made under the provisions of the act created a presumptive transfer of title effective *in praesenti,* not subject to revocation, but that such presumption could be rebutted by evidence of an original intention not to create an effective joint tenancy. Contrasting that part of the statute which created an estate in joint tenancy with that part which established a rule of evidence after the death of either depositor, the court said, on page 396 of the State Report:

"The other provisions may be regarded as creating a rebuttable presumption of the *making of a transfer;* the added provision as creating an irrebuttable presumption, or 'conclusive evidence,' as the provision itself states, of an effective transfer, in cases of survivorship only." (Italics ours.)

Emphasizing this construction, Judge Cardozo, in a concurring opinion, said on page 397:

"The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, but that after the death of either leaving a deposit then subsisting, the presumption becomes conclusive as to the title of the survivor."

As we construe the two opinions in that case, taken together, they hold that a joint tenancy, once created, is irrevocable; that a deposit in the form prescribed

by the statute raises the presumption of a joint tenancy, but that the presumption may be rebutted by evidence of a contrary intention if asserted during the lifetime of both depositors; that after the death of either depositor the presumption becomes conclusive.

*Hill v. Badeljy,* 107 Cal. App. 598, 290 Pac. 637, was a case in which the constitutionality of a similar section and also the intent of the depositor in opening the account were major questions under consideration. The court followed the rule adopted in New York, and said:

"The question involved in cases of this character is the intention of the parties making the deposit and where such intention is evidenced by a written agreement, as was done in the case at bar, this question of intention ceases to be an issue and the courts are bound by the written agreement. *Kennedy v. McMurray, supra,* [169 Cal. 287, 146 Pac. 647]; *Conneally v. San Francisco S. & L. Soc., supra,* [70 Cal. App. 180, 232 Pac. 755].

"Furthermore, in any action between the depositors or the bank during the *lifetime of both depositors,* in the absence of fraud or mistake, parol evidence is not admissible to change the terms or the legal effect of such a written instrument where it is in no respect uncertain or ambiguous *(Conneally v. San Francisco C. & L. Soc., supra; Estate of Gurnsey, supra* [117 Cal. 211, 170 Pac. 402]; *De Rocha v. Corse,* 94 Cal. App. 340, [271 Pac. 208]; *Nimmo v. Fitzgerald,* 202 Cal. 565, [261 Pac. 1015]), but after one of the depositors has died, neither the surviving depositor nor the bank will be permitted under section 15a of the Bank Act to show that the account was created by mistake of one of the depositors."

There would, of course, be less reason for permitting a third party to come in after a depositor's death and question his intent in making the deposit.

In Michigan, where the statute contains a provision of joint tenancy with right of survivorship, but not

the provision regarding conclusive evidence after death of either depositor, the courts have uniformly held that the statute fixes the ownership of the funds in the persons named as joint tenants, with the attendant right of survivorship. *In re Refeld's Estate,* 198 Mich. 249, 164 N. W. 372; *People's State Bank v. Miller's Estate,* 198 Mich. 783, 165 N. W. 608; *Murphy v. Michigan Trust Co.,* 221 Mich. 243, 190 N. W. 698.

In Minnesota the holding is to the same effect. *Dyste v. Farmers and Mechanics Sav. Bank,* 179 Minn. 430, 229 N. W. 865.

The appellant contends that our court has adopted a different rule, citing as authority *Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003, and *Daly v. Pacific Savings & Loan Assn.,* 154 Wash. 249, 282 Pac. 60. The first case arose out of a section of the Act of 1917, relating to banks and trust companies; the second arose out of a section of the Act of 1919, relating to savings and loan associations. Neither of those acts contains a provision regarding joint tenancy or survivorship or prescribes a rule of conclusive evidence. The particular sections of those statutes were for the protection of banks and associations, and did not establish a rule of property or a rule of evidence. The cases cited, therefore, have no application here.

Construing the provisions of the mutual savings bank act of 1915 (Rem. Comp. Stat., § 3348, subd. 2), it is our conclusion that a deposit of the nature involved in this case presumptively creates an estate in joint tenancy with the attendant right of survivorship; that the presumption may be rebutted during the lifetime of both depositors, but that upon the death of either depositor the presumption, in the absence of fraud or undue influence, becomes conclusive in any action or proceeding to which the bank or the surviving depositor is a party.

From either angle in which this case is viewed, the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.