[No. 30211. *En Banc.* January 30, 1948.]

RAYMOND D. MUNSON, as *Executor, Appellant,* v. RITA HAYE *et al., Respondents.*[1]

[1]Reported in 189 P. (2d) 464.

[black redaction bars]

*Thomas Malott* and *Wernette & Crowley*, for appellant.

*A. W. Dolphin*, for respondents.

HILL, J.—The facts essential to a decision in this case are undisputed. Raymond D. Munson and Helene D. Munson were married in 1923 and lived together as husband and wife until her death on June 13, 1946. During the greater part of her married life, Mrs. Munson worked for the Northern Pacific Railway Company, in Spokane.

On April 16, 1942, Mr. and Mrs. Munson opened account No. 20983 in the First Federal Savings and Loan Association of Spokane, with $38.33. They signed at that time exhibit No. 1-A, which reads as follows:

> "No. 20983
>
> "I hereby subscribe for ........... $\left. \begin{array}{l} \text{Installment Thrift} \\ \text{Optional Savings} \\ \text{Prepaid} \\ \text{Full-paid Income} \end{array} \right\}$ Shares
>
> in the First Federal Savings and Loan Association of Spokane subject to the laws of the United States, the rules and regulations of the Federal Home Loan Bank Board and the charter and by-laws of the association as they now are or as they may hereafter be amended.
>
> "I understand the dividend and repurchase provisions in the charter of the association.
>
> "Sign here—/S/ Mrs. Helene D. Munson
> /S/ R. S. [D.] Munson
> "Address ..............................................................."

Deposits were thereafter made from time to time (and it may be assumed that they were all from Mrs. Munson's earnings) until, together with dividends, there was $1,389.19

in the account on May 18, 1946. No withdrawals had been made prior thereto. On that date, all of the money was transferred to a new account, No. 27209, in the name of Mrs. Helene D. Munson or Rita Haye. This transfer was made on the basis of a document brought to the savings and loan association by Mrs. Haye, which read as follows:

"First Federal Savings and Loan Association
of Spokane, Washington
"Gentlemen: Please give to Rita Haye $1,389.19 and any interest due on said account, and charge to my account.
"Dated at Spokane, Washington, this 17th day of May, 1946.
"/S/ Mrs. Helene D. Munson"
(Exhibit No. 1-C)

Mrs. Munson died on June 13, 1946, and on June 17, 1946, Mrs. Haye had the $1,389.19 transferred to yet another new account, No. 27347, in the name of Rita Haye, where it remained, together with accrued dividends, at the time this case was tried.

Mrs. Munson had, on May 17th, when the withdrawal order was signed, directed Mrs. Haye to make payments in varying amounts from this fund to fellow employees to whom she felt indebted for services rendered and kindnesses extended to her during the period when she was continuing to work under the difficult conditions imposed by her illness. The remainder, if any, was to be divided between Rita Haye and decedent's aunt, Maude Golden, who had come to Spokane from Seattle to care for her niece in her last illness. Mrs. Haye disclaimed any personal interest in or any right to any portion of the money, and Mrs. Golden made it clear that she expected to receive only so much thereof as Mrs. Haye might elect to give her.

Mr. Munson was appointed and qualified as executor of his wife's estate and, as such, demanded possession of the $1,389.19, on the theory that the same had not been divested of its status as community property and was subject to administration in his wife's estate. This demand not being complied with, he instituted this proceeding, as such executor, to recover the amount of the account, together with all interest accrued thereon.

The trial court found

" . . . that the deceased, Helen D. Munson, had a right to transfer said joint-account to Rita Haye without the consent of the plaintiff [appellant] Raymond D. Munson; that the Charter of the First Federal Savings & Loan Association provided for the holding of joint accounts by two or more persons, plaintiff admits that the account in question was a joint account with the right of withdrawal in either party, without limitations upon the amount of such withdrawal, therefore the deceased had a right to withdraw all of said funds and make whatever disposition of them she might deem proper. These findings are further supported by State Statutes having to do with Savings and Loan Associations."

The trial court also found

" . . . that when the money in question was deposited in the bank in the name of Helen Munson and Rita Haye, the deceased gave Rita Haye, specific instructions as to how she wanted the money distributed at her death; that the money was given to Rita Haye by the deceased in her lifetime with instructions to pay debts which the deceased honestly felt must be paid because they were for services performed at a time when she so greatly needed help and the Court finds that said allegations were established by testimony given at the trial."

Based upon these findings, the trial court concluded that the cause should be dismissed as to all defendants and entered an order to that effect.

In its findings, the trial court referred to the money as having been deposited in a bank. For the determination of the questions here involved, it makes no difference whether the community funds of Mr. and Mrs. Munson were deposited in a bank or in a savings and loan association. However, in the interest of accuracy of expression, since savings and loan associations may not use the word "bank" in their names (Rem. Rev. Stat., § 3225 [P.P.C. § 300-1]) and since they are prohibited from carrying commercial or checking accounts (Rem. Rev. Stat. (Sup.), § 3717-48 [P.P.C. § 453-95]; Rem. Supp. 1945, § 3717-149), we desire it to be understood that when, hereinbefore or hereinafter, we use the word "deposits" or "deposited" with reference to money placed in a savings and loan association, it is used

on the express authority of *Rummens v. Home Sav. & Loan Ass'n,* 182 Wash. 539, 47 P. (2d) 845, 100 A. L. R. 570, but with recognition of the distinction pointed out in *Aberdeen Sav. & Loan Ass'n v. Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232, wherein it was said:

"There is, of course, a great difference between the corporate structure of a savings and loan association and that of a commercial bank, and the word 'depositor,' when used in reference to a commercial bank, imports in law a different meaning from that which the word implies when used in connection with a savings and loan association, as, in the latter case, money placed by the depositor in the association is, to a great extent at least, capital for investment for the depositor's benefit."

"Depositors," as used herein, also refers to all of those whom either a bank or a savings and loan association recognizes as joint owners of an account, despite the fact that the deposits are actually made by one individual and in many instances the funds deposited belong to only one of the parties.

The appellant's position is that the funds deposited were community property, and that the account at all times retained its status as such; that, while Mrs. Munson had the right to withdraw all or any part of the account, she had no right to give the money so withdrawn away or to divest Mr. Munson and the community of all interest therein.

Respondent Rita Haye contends that, when the community funds were placed in the savings and loan association, they ceased to be community funds, and that Mr. and Mrs. Munson thereafter held this property as joint tenants, each having the right to appropriate all or any part thereof to his or her own use. She also takes the position that there was evidence to support the trial court's finding that there was a consideration to the Munson marital community for the transfer of the account, in that the payments which she was to make to various individuals were in compensation for services rendered to Mrs. Munson.

This latter contention may be quickly disposed of. A careful reading of the trial court's finding does not disclose

that it held that there was any obligation on the part of the community to the friends of Mrs. Munson to whom Mrs. Haye was to make payments. The court merely found that the payments to be made by Mrs. Haye were "debts which the deceased *honestly felt* must be paid."

■ In any event, the evidence establishes that the funds deposited were community funds, and that there was no legal nor, in fact, any moral obligation on the part of the community to make the payments which Mrs. Munson directed Mrs. Haye to make. The services rendered to Mrs. Munson were kindly and friendly and not those for which any compensation is ordinarily anticipated, except possibly in the case of Mrs. Golden, and there was, based on her own testimony, nothing definite about how much, if anything, she was to receive. Regardless of Mrs. Munson's feeling of obligation, her turning over community property, if it retained that status, to Mrs. Haye for the purposes indicated was such a gift as neither member of the community could make without the consent of the other. *Nimey v. Nimey*, 182 Wash. 194, 45 P. (2d) 949; *In re McCoy's Estate*, 189 Wash. 103, 63 P. (2d) 522; *Occidental Life Ins. Co. v. Powers*, 192 Wash. 475, 74 P. (2d) 27, 114 A. L. R. 531; *Fields v. Andrus*, 20 Wn. (2d) 452, 148 P. (2d) 313; *In re Towey's Estate*, 22 Wn. (2d) 212, 155 P. (2d) 273.

We then come to the decisive questions in the case, whether the community was divested of its interest in this property, or whether Mrs. Munson had acquired, regardless of its status, such rights in savings and loan association account No. 20983 as to make it possible for her to deprive her husband of any interest therein.

We approach the problem presented here with the realization that we are dealing with an aspect of property rights which concerns and affects more of our people than any other that we are called upon to consider. It is particularly important so far as it affects husbands and wives, and their community funds, whether deposited in savings and loan associations or in banks.

Respondents urge upon us a position which, if adopted, would mean that every joint and several account with a

right of survivorship opened by a husband and wife, and every dollar thereafter deposited therein, would *ipso facto* cease to be community property. It would become their property as joint tenants, with either having the right to do as he or she pleased with all or any part thereof so long as they both lived, and with the surviving spouse becoming the sole owner of the account and entitled to any balance therein. We do not have involved in this case the question of the rights of a survivor, and the right of survivorship is referred to only because of its relationship to the joint tenancy status which respondents would substitute for the rights of members of the marital community.

The respondents' contention that a joint tenancy was created in the savings and loan association account involved in this case obviously is not predicated upon a deposit agreement or any document executed by Mr. and Mrs. Munson. We have heretofore set forth the only instrument that they signed, and it does not even purport to be a deposit agreement. The trial court, in its findings which we have quoted, placed emphasis on the extract from the charter of the savings and loan association admitted in evidence, which states that:

"Share accounts may be purchased and held absolutely by, or in trust for, any person, including an individual, male, female, adult or minor, single or married, a partnership, association, and corporation. The receipt or acquittance of any member, including a minor person or a married woman, who holds a share account shall be a valid and sufficient release and discharge of the association for any payment to such person on any share account. Two or more persons may hold share accounts jointly in any manner permitted by law."

This, it seems to us, does no more than give the respondent savings and loan association a basis for argument that it is excused from any liability by reason of the payment made to Mrs. Haye on the order of Mrs. Munson. Respondents' position must then find its basis in Rem. Rev. Stat. (Sup.), § 3717-41 [P.P.C. § 453-95], which read as follows:

"Two or more persons may jointly become members in an association and such persons shall enjoy the same rights as

though the shares had been issued to an individual member and unless express written instructions to the contrary are given to the association relative to such account, and written receipt thereof acknowledged by such association, any of such persons may exercise the rights of ownership, transfer and withdrawal incidental to such ·ownership without the other joint holders joining therein, and in the event of death, the survivor or survivors may exercise all rights incidental to such stock: . . ."

We will assume that this provision became a part of the subscription agreement.

(Parenthetically, it may be stated that Rem. Rev. Stat. (Sup.), § 3717-41, was repealed by chapter 235, p. 655, of the Laws of 1945, but we do not regard § 40 of that chapter, being Rem. Supp. 1945, § 3717-159, as applicable to the account involved in the present case. However, if it were, the result would be the same.)

For the purpose of reference and comparison, we also set forth a section of the mutual savings bank act:

". . . (3) After any deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants, and the same, together with all dividends thereon, shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to such savings bank for all payments made on account of such deposit prior to the receipt by such savings bank of notice in writing not to pay such deposit in accordance with the terms thereof. The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor." (Rem. Rev. Stat., § 3348 [P.P.C. § 316-45].)

Statutes such as these are intended primarily for the protection of the institution in which the deposits are made.

It must be remembered that two transactions are involved in the formation of any account involving more than one depositor: the transaction between the named depositors, and the transaction between the institutions receiving the funds and the depositors. Depositors usually sign an agreement with a bank covering the terms on which withdrawals may be made, and statutory provisions enacted for the protection of the bank frequently become a part of that agreement. Such an agreement with a bank does not necessarily have any bearing upon the transaction or agreement between the depositors themselves. What that transaction may be is a matter of intent or agreement between the depositors. *In re Porianda's Estate*, 256 N. Y. 423, 176 N. E. 826; *People's Sav. Bank v. Rynn,* 57 R. I. 411, 190 Atl. 440; *Buckley v. Buckley*, 301 Mass. 530, 17 N. E. (2d) 887; *O'Brien v. Biegger*, 233 Iowa 1179, 11 N. W. (2d) 412; 5 Michie on Banks and Banking 99, § 46.

Under the mutual savings bank act (Rem. Rev. Stat., § 3348(3)), above set forth, it is provided that, in the absence of fraud or undue influence, the fact that a deposit was made in the form referred to in the statute *is conclusive evidence in any action or proceeding to which the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in the survivor.* This clearly indicates that it is not conclusive evidence in a contest between the depositors during the lifetime of both.

In construing a New York statute in which the language is almost identical with that of Rem. Rev. Stat., § 3348(3), except that it is not limited to mutual savings banks but applies to all banks, the New York courts made it clear that:

"When a bank account is opened in the form prescribed by statute (Banking Law, § 249, subd. 3), a presumption at once arises that the interest of the depositors is that of joint tenants. Upon the death of one of the depositors, this presumption becomes conclusive in favor of the survivor in respect of any moneys then left in the account. *It continues to be a mere presumption in respect of any moneys previously withdrawn.*" (Italics ours.) *Marrow v. Moskowitz,* 255 N. Y. 219, 174 N. E. 460.

Benjamin M. Cardozo, then chief judge of the New York court of appeals, in a concurring opinion in *Moskowitz v. Marrow*, 251 N. Y. 380, 167 N. E. 506, 66 A. L. R. 870, stated the reasons why only a *presumption* of joint tenancy can be raised so long as the parties are alive, *or as to any funds withdrawn prior to death*:

"There had been a ruling by this court in *Kelly v. Beers* (194 N. Y. 49) that a deposit by one in the name of himself and another or the survivor, was unavailing in and of itself to give to the other any interest whatever, either conclusive or presumptive. The intention thus revealed was thought to be abortive in default of evidence of the delivery essential to a gift. The aim of the statute superseding that decision was not to cramp intention, but to give it power to prevail. Capacity was to be liberated, not cabined or confined. Bank accounts in this form are opened not infrequently by the simple and the humble. The last thing that was in view was to encompass them with new embarrassments, to penalize their ignorance. What was sought and what was needed was to let them carry out their will. There was to be flexibility and simplicity, not rigidity and formalism, in an adjustment between means and ends. A presumption, to be sure, there is that the form of the deposit, unqualified by agreement, is an accurate expression of the realities of title. The presumption is no longer subject to be rebutted—the form, in the words of the statute, becomes 'conclusive evidence' of the intention—when one of the depositors dies with the deposit still intact. But except after death, or in circumstances where prejudice would result to a bank acting without written notice of a countervailing interest, the true agreement may be proved, though in proving it there is a departure from the terms of the presumption."

It was in this opinion that Judge Cardozo coined the much-quoted phrase, "realities of ownership." The "realities of ownership," the courts have again and again pointed out, are likely to be more cogent than the form of the deposit agreement in determining the intention of the depositors.

The New York court, in the two *Moskowitz* cases just cited and quoted from, was discussing a statute which, as we have said, is almost identical with Rem. Rev. Stat.,

§ 3348(3), which provides that when deposits in mutual savings banks are made in certain forms, they become the property of the depositors as joint tenants.

■ We agree with the New York courts that, when a deposit is made in the form prescribed by such a statute as Rem. Rev. Stat., § 3348(3), a presumption arises that the interest of the depositors is that of joint tenants. And, on the authority of *Nelson v. Olympia Fed. Sav. & Loan Ass'n,* 193 Wash. 222, 74 P. (2d) 1019, it might be said that a similar presumption arose when two or more persons jointly became members in a savings and loan association under Rem. Rev. Stat. (Sup.), § 3717-41. (Both *Nelson v. Olympia Fed. Sav. & Loan Ass'n, supra,* and *In re Ivers' Estate,* 4 Wn. (2d) 477, 104 P. (2d) 467, relied upon by appellant, deal with the right of survivorship. We are here concerned with the right of one member of a marital community to deprive the other of all right or interest in all or part of the savings and loan account while they are both alive.) ·

■■ The very strongest position that respondents can contend for is that when Mr. and Mrs. Munson "jointly became members in an association," a presumption arose, under the provisions of Rem. Rev. Stat. (Sup.), § 3717-41, that they were joint tenants. That presumption was met and destroyed when proof was presented that the funds deposited were community property. That fact being established, evidence that was clear, certain, and convincing was required to establish that Mr. and Mrs. Munson intended to change the status of community property by giving to either the right to appropriate all or any part of the account to his or her own use and to divest the other of all interest in the part so appropriated. *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204. The parties here signed nothing which indicated an intention to create a joint tenancy, and the statute relied upon makes no reference to joint tenancies.

We see very little which could operate to raise a presumption of joint tenancy in this case; but we have preferred to meet the respondents' contention squarely and to say that,

if there was such a presumption, it ceased to exist as soon as evidence was introduced showing that the funds deposited were community property. There was no clear, certain, and convincing evidence that Mr. and Mrs. Munson intended to change the status of their community property by giving each of them the present right to appropriate all or any part of it to his or her own use and to divest the other of any right therein. We have not overlooked the fact that Mrs. Munson kept the passbook in her possession; but it was more convenient for her to handle the financial transactions of the community. Her possession of the book is therefore but slight, if any, evidence of such an intention.

It therefore follows that, on the facts before the trial court, Mrs. Munson did not have the right to appropriate account No. 20983 to her own use and to divest Mr. Munson of any interest therein; that the account retained its status as community property and should be included in the assets of the estate of Helene D. Munson, deceased, and be subject to administration therein; that account No. 27347 is made up of the same funds as were in account No. 20983, together with accrued dividends; that Rita Haye never acquired any interest in either of said accounts and either should have transferred account No. 27347 to Mr. Munson, as executor of his wife's estate, or should have delivered to him the amount therein when he made demand therefor.

We believe that the action was properly dismissed as to the First Federal Savings and Loan Association of Spokane, and the judgment of dismissal as to it is affirmed. The charter provisions and the statute referred to were operative to protect the savings and loan association in permitting the withdrawals and transfers herein referred to.

The judgment of dismissal as to Rita Haye and Chester W. Haye is reversed, with instructions to enter a judgment directing the transfer by Rita Haye to the executor of Mrs. Munson's estate of account No. 27347, or to deliver to him the sum of $1,389.19, together with all dividends accrued thereon since May 18, 1946.

We are of the opinion that Mr. and Mrs. Haye, as defendants below and as respondents here, were not en-

gaged in this litigation with any thought of pecuniary gain, but because Mrs. Haye, in good faith but mistakenly, regarded herself as a trustee of these funds, to disburse them in accordance with Mrs. Munson's last wishes. Mrs. Munson's own mistaken conception of her rights in the account in question was responsible for the entire litigation, and it is only proper that her estate should bear the cost thereof. All costs in both the superior and the supreme courts will be taxed against Raymond D. Munson, as executor of the estate of Helene D. Munson, deceased.

MALLERY, C. J., BEALS, MILLARD, STEINERT, SIMPSON, and JEFFERS, JJ., concur.

SCHWELLENBACH, J. (dissenting)—When the money was deposited it was community property. It retained such status during all of the time that it was on deposit. However, careful study of the facts clearly reveals that the money was deposited by the community composed of Mr. and Mrs. Munson under an *agreement* between Mr. and Mrs. Munson and the savings and loan association that (1) in the event of the death of either of the depositors, the survivor could take all; and (2) under the further agreement that, during the life of the parties, either Mr. or Mrs. Munson could withdraw all, or any part, of the funds deposited, and, if such person wished, to appropriate such funds withdrawn to his or her own use (no written instructions to the contrary having been given to the association).

This agreement was in complete conformity with the rule laid down by this court in *In re Witte's Estate*, 21 Wn. (2d) 112, 150 P. (2d) 595, to the effect that a husband and wife, by their agreement, may change the status of community property. We stated:

"The status of property, when once fixed, remains so in character until changed by deed, by agreement of the parties, by operation of law, or by the working of some form of estoppel."

This was a mutual *agreement* entered into by and between Mr. and Mrs. Munson and the association, providing for the contingent determination of the status of the property at

some later time. Each deposit was made contingent upon the right of withdrawal and appropriation by either of the depositors. All, or a part, of the funds could be withdrawn by either for the purpose of applying the proceeds to a community purpose. Such funds withdrawn would continue to be community property. It would be the act of withdrawal with intention to appropriate to the use of the withdrawer, which would change the status of the property from community to separate.

When Mrs. Munson withdrew the entire fund and appropriated it to her own use, she exercised the rights granted to her under the agreement and thereby changed the status of the property from community to separate. I believe that the judgment should be affirmed.

[1]Reported in 189 P. (2d) 471.