46 Wn.2d 637 (1955)
283 P.2d 989
In the Matter of the Estate of NATHAN B. GREEN, Deceased.
MAY ROE et al., Appellants,
v.
LEONA MEEKER, as Administratrix, et al., Respondents.[1]
No. 33190.
The Supreme Court of Washington, Department Two.
May 19, 1955.
*638 Bigelow & Manier, for appellants.
Pebbles & Swanson and Brodie & Fristoe, for respondents.
HILL, J.
Nathan B. Green owned share account No. 5575 in the Olympia Federal Savings and Loan Association on February 21, 1952, on which date he went to the association's place of business and, on the blank side of a subscription and signature card, wrote the following:
 "2/21/52
"This will authorize the Olympia Federal Savings & Loan Assn to add the names of Mrs. May Roe or Clarence Roe to Sa. account no 5575, making the account red [sic] Nathan B. Green or Mrs. May Roe or Clarence Roe with full withdrawal
privileges x Nathan B Green"
This is apparently entirely in Mr. Green's handwriting.
The other side of the card reads as follows (the portions in italics being written in ink, again apparently in the handwriting of Mr. Green), and it is conceded that the signature appearing thereon is his:
No. 5575 Date Feb. 21, 1952 195_
Names Nathan B Green or Mrs. May Roe or Clarence Roe
"The undersigned hereby subscribe for a membership and for a ____[*] share account in the OLYMPIA FEDERAL SAVINGS AND LOAN ASSOCIATION in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common, subject to the laws of the United States, the rules and regulations of the Federal Home Loan Bank Board and the charter and by-laws of the association as they now are or as they may hereafter be amended.
"It is understood and agreed that the membership and share account subscribed for are issued by the association, and receipt of Pass Book and/or Certificate along with a copy of the charter and by-laws is acknowledged by the undersigned. Specimen signatures are shown below and the association is authorized to act without further inquiry in accordance with writings bearing any such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to this membership and share account, subject to the by-laws of the association, whether the other person *639 or persons named in the Pass Book and/or Certificate be living or not.
 [*]Investment or savings.
 Nathan B. Green ______________________________
 Signature Signature
 P.O. Box 604 ______________________________
 Street and Number Street and Number
 Olympia Wash. ______________________________
 City and State City and State
GREEN, NATHAN B. OR MRS MAY ROE OR CLARENCE ROE"
(Italics ours.)
From that time the account stood in the association records in the name of "Green, Nathan B. or Mrs. May Roe or Clarence Roe," and so appears in the "share account" book or passbook.
Neither Mrs. May Roe, a sister of Nathan B. Green, nor Clarence Roe, her son, ever signed such a membership subscription and signature card. They had no knowledge that Mr. Green had placed their names on the account until after his death, which occurred June 26, 1952.
The administratrix of Mr. Green's estate claimed the account as one of the assets of the estate. His heirs, other than Mrs. Roe, joined with the administratrix in contending that the savings account is an asset of the estate.
Mrs. May Roe and Clarence Roe filed objections to the final report and account of the administratrix, claiming the account by right of survivorship. The trial court dismissed their objections and held the account in question to be a part of the assets of the estate of Nathan B. Green, deceased. Mrs. May Roe and Clarence Roe appeal.
The first question to be considered is whether the action of Mr. Green on February 21, 1952, and the association's assent thereto, were sufficient to raise a presumption that Mr. Green, Mrs. Roe, and Clarence Roe were joint tenants with right of survivorship in Mr. Green's savings account. If the answer is no, the appeal is concluded and the judgment must be affirmed. If the answer is yes, another question arises: Was that presumption conclusive or rebuttable? And if the answer to that question is that it was rebuttable, we have a third question: Was the presumption rebutted?
*640 To determine the answer to the first question, we must consider Mr. Green's action in the light of the section of the savings and loan association act which reads as follows:
"Savings may be received by an association in the name of two or more members as joint tenants with right of survivorship. In such case, payment to either member discharges the association from liability upon the account and, upon the death of either of the joint tenants, the association shall be liable only to the survivor, or survivors." RCW 33.20.030 [cf. Laws of 1945, chapter 235, § 40, p. 671].
[1] Read literally, the savings and loan statute (and the printed membership application and signature card) seems to contemplate the opening of a new account by two or more members as "joint tenants with right of survivorship." But where, as here, it is clear that it is the intention of the owner of an account and of the savings and loan association to change the status of an existing account by making an additional party or parties "joint tenants with right of survivorship," such a change in status may be effected without the formality of closing the old account and opening a new. Nelson v. Olympia Federal Sav. & Loan Ass'n (1938), 193 Wash. 222, 74 P. (2d) 1019. (This case construed a 1933 statute, Laws of 1933, chapter 183, § 41, p. 729, but is unquestionably authority for the position here taken.)
[2] Creation of the status recognized by the statute (or the presumption of that status) depends upon the agreement between the person who opens the account (or the owner of an account already open) and the savings and loan association, and not upon the knowledge of other individuals that their names have been added to the account as joint tenants with right of survivorship, nor upon their express consent thereto. Tobas v. Mutual Bldg. & Loan Ass'n (1946), 147 Neb. 676, 24 N.W. (2d) 870; In re Fast's Estate (1950), 169 Kan. 238, 218 P. (2d) 184.
Thus, when a member of a savings and loan association has authorized the association, and the association has assented, to add the names of one or more individuals (to whom we shall refer as co-owners, to distinguish them from the original owner) to his savings account as joint tenants *641 with the right of survivorship, that presumptively becomes the relationship of the owner and co-owners even though the latter were not present at the time, never signed a signature card or application for membership, and knew nothing about the transaction until after the death of the owner of the account. RCW 33.20.030; Nelson v. Olympia Fed. Sav. & Loan Ass'n, supra; Munson v. Haye (1948), 29 Wn. (2d) 733, 189 P. (2d) 464; In re Fast's Estate, supra; Tobas v. Mutual Bldg. & Loan Ass'n, supra.
For cases dealing with bank deposits rather than savings and loan association accounts, see In re Rehfeld's Estate (1917), 198 Mich. 249, 164 N.W. 372; In re Muckle's Estate (1942), 35 N.Y.S. (2d) 391; Schrage v. Schram (1941), 39 F. Supp. 906 (applying Michigan law). Contra: See Doubler v. Doubler (1952), 412 Ill. 597, 107 N.E. (2d) 789, based upon peculiar wording of the Illinois statute providing that an agreement permitting payment to survivors must be signed by all parties. That opinion contains no mention of Vaughan v. Millikin Nat. Bank (1931), 263 Ill. App. 301, where a contrary result was reached.
[3] We are satisfied that the transaction between Nathan B. Green and the savings and loan association amounted to an agreement between them to create a joint tenancy with the right of survivorship, in the names of Mr. Green, Mrs. Roe, and Clarence Roe. That, presumptively, became the status of the account. We must now determine whether that presumption was conclusive or rebuttable.
The statutes relating to joint tenancy with right of survivorship in accounts in banks and trust companies (RCW 30.20.015; Laws of 1951, chapter 18, § 1, p. 36) and in mutual savings banks (RCW 32.12.030 (3) [cf. Laws of 1929, chapter 123, § 2, p. 280]) contain the following provision, which does not appear in the above quoted statute (RCW 33.20.030) relating to joint tenancy with right of survivorship in savings accounts in savings and loan associations:
"... The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank *642 [or savings bank] or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."
Other differences between these statutes are not material here. All three provide for joint tenancy with rights of survivorship in accounts. Deposits made in the forms prescribed by the bank and trust company and mutual savings bank statutes raise a presumption of joint tenancy between the depositors, which presumption may be rebutted during the lifetime of the depositors by evidence of a contrary intention; however, because of the above quoted provision, such deposits become "conclusive evidence... of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor" (i.e., the presumption of the right of survivorship becomes conclusive) in any action in which either the bank or the surviving depositor is a party. Winner v. Carroll (1932), 169 Wash. 208, 13 P. (2d) 450. See, also, Munson v. Haye, supra. Both of these Washington cases rely upon and quote from Moskowitz v. Marrow (1929), 251 N.Y. 380, 167 N.E. 506, 66 A.L.R. 870. See, also, Marrow v. Moskowitz (1931), 255 N.Y. 219, 174 N.E. 460. (We are aware that, as said by eminent authority, "In strictness, there cannot be such a thing as a `conclusive presumption.'" 9 Wigmore on Evidence (3d ed.) 292, § 2492. The so-called "conclusive presumption" is not a rule of evidence but a provision of substantive law. For an excellent discussion of the effect of statutes making certain facts "conclusive evidence" of another fact, see Havens v. Havens (1925), 126 Misc. 155, 215 App. Div. 756, 213 N.Y.S. 230.)
[4] However, the failure to include the quoted portion of the other two statutes in the savings and loan association act leaves the latter without any provision for a conclusive presumption as to the existence of a right of survivorship. We held in Munson v. Haye, supra, that the presumption of a joint tenancy as it related to accounts established under a prior savings and loan association statute (and the same would be true under the present statute) could be rebutted as to withdrawals made during the lifetime of the presumed *643 joint tenants. We conclude that the presumption relative to the right of survivorship which arises out of the contract with the savings and loan association is likewise rebuttable. We find no cases involving savings and loan association statutes on this phase of the case, but in cases construing similar statutes dealing with bank deposits prior to the addition thereto of the "conclusive evidence" provisions, it was held that the presumption of the existence of a right of survivorship was rebuttable. In re Rehfeld's Estate, supra; Havens v. Havens, supra, and cases cited therein; In re Powers' Will (1953), 124 N.Y.S. (2d) 277.
We come now to the third question: Was the presumption rebutted?
[5] The only evidence other than the transaction on February 21, 1952, bearing upon whether Mr. Green intended to create a joint tenancy with right of survivorship in his savings account with Mrs. Roe and Clarence Roe, is comprised of three letters that had not been mailed and that were found in Mr. Green's effects after his death. In one, a letter to Clarence Roe dated March 25, 1952 (more than a month after the transaction with the savings and loan association upon which the presumption rests), Mr. Green stated that he was sending a card
"`... for you and May to sign.... Then if I leave this world you can get what I have in the Building and Loan without to much trouble. So if you will sighn [sic] on the right and have May sign on the left with your address I be very greatfull [sic].
"`I will write May a line.'"
The "line" to May, apparently written the same date, said:
"`I guess I will go to Calif. next week, and I am sending a card from the Building and Loan. They wanted your signature. I told Clarence the reason.'"
Those letters indicate an intention, as of the date they were written, that Mrs. May Roe and Clarence Roe should have a right of survivorship in the account.
A third letter, written June 12, 1952, after Mr. Green's return from California, began, "`Dear Sister,'" and apparently was intended for Mrs. Roe. This letter tells of the *644 writer's physical condition and of his trip but makes no reference to the savings and loan association account.
Whatever may have been the reason Mr. Green did not mail any of these letters, we find nothing to rebut the presumption that, on February 21, 1952, he intended to make Mrs. May Roe and Clarence Roe joint tenants with right of survivorship in his savings and loan association savings account.
The judgment dismissing the objections of Mrs. May Roe and Clarence Roe to the final report and account of the administratrix, dismissing their claim to account No. 5575 in the Olympia Federal Savings and Loan Association, and making the same a part of the assets of the estate of Nathan B. Green, deceased, is reversed; and the trial court is instructed to sustain the objections of Mrs. May Roe and Clarence Roe to the final report and account, and to direct that the administratrix take all necessary steps to transfer that account as it stood at the time of the death of Nathan B. Green and any dividends thereon and any amounts that she may have withdrawn therefrom, together with interest on the amounts so withdrawn, to Mrs. May Roe and Clarence Roe.
To charge the estate of Nathan B. Green, deceased, with the appellants' costs herein would be to make Mrs. Roe pay one third of the costs of her successful appeal; appellants, therefore, will recover costs from those respondents herein who are heirs of Nathan B. Green, deceased.
HAMLEY, C.J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.
NOTES
[1] Reported in 283 P. (2d) 989.