75 Wn.2d 123 (1969)
449 P.2d 413
In the Matter of the Guardianship of ANNA M. MATT.
NOREEN WATSON, as Guardian, Appellant,
v.
WASHINGTON MUTUAL SAVINGS BANK et al., Defendants, ETHLEN PRESTON, Respondent.[*]
No. 39362.
The Supreme Court of Washington, Department Two.
January 3, 1969.
Eugene J. Craig, for appellant.
Olwell, Boyle & Hattrup and Lee Olwell, for respondent.
*124 HAMILTON, J.
Anna Matt was 85 years old in 1965. She was a widow and had no children or other relatives. For several years she had relied on assistance from her close friends in business and everyday affairs. Noreen Watson and her husband, Anna Matt's neighbors, had in recent years rendered the bulk of this assistance. Ethlen Preston, whom Anna Matt considered as a daughter, after an absence of several years, returned to Seattle in early 1965, and began to also assist Mrs. Matt. In October, 1965, Mrs. Preston and Mrs. Matt went to the Washington Mutual Savings Bank, where Mrs. Matt had on deposit in her own name in excess of $10,400. While there, she and Mrs. Preston executed a signature card which added Mrs. Preston's name to the account. This card reads, in part: "Funds in this account are to be paid to either or the survivor of us." Mrs. Matt gave Mrs. Preston the passbook to the account which she still retains.
On January 20, 1966, Mrs. Matt was judicially declared to be incompetent. Mrs. Watson was appointed guardian of her person and estate. In the process of gathering the assets of the estate, Mrs. Watson learned of the joint bank account. Mrs. Watson and her attorney found Mrs. Preston unwilling to turn over the passbook or to assume payment of the hospital and living expenses of Mrs. Matt. Mrs. Preston had not withdrawn any money from the account.
Mrs. Watson, as guardian, instituted this action on behalf of her ward, Mrs. Matt, to recover the funds in the joint account. The bank was made a party defendant. However, the bank disclaimed any interest in the outcome and counsel appearing for the bank presented no evidence and asked no questions of any of the witnesses produced by the other parties. It is clear that the dispute is solely between the guardian and Mrs. Preston.
There was evidence presented which, if accepted as true, would establish that Mrs. Matt believed that somebody was after her money and that she, Mrs. Matt, would be unable to resist; that Mrs. Matt added Mrs. Preston's name to the account in the mistaken belief that Mrs. Preston would also *125 have to sign any request for withdrawals; and that the purpose of adding Mrs. Preston's name to the account was to aid Mrs. Matt in safeguarding her property. There is also evidence in the record which, if believed, would establish that Mrs. Matt added Mrs. Preston's name to the account under an agreement with Mrs. Preston that Mrs. Preston would use the money to support and care for Mrs. Matt, if necessary, and that Mrs. Preston would receive the balance when Mrs. Matt died.
It is clear, however, from statements made by the trial judge during the taking of evidence, from statements in his oral opinion, and from his findings, conclusions, and orders, that the trial judge did not consider this evidence and did not resolve the factual issues thus raised with respect to the parties' intentions in opening this joint account. Rather the trial court, relying on RCW 32.12.030(3), considered the signature card to be conclusive evidence of the intention of Mrs. Matt and Mrs. Preston and held that they intended to create a joint tenancy with right of survivorship. The trial court also found that Mrs. Matt was not the victim of fraud or undue influence with respect to this transaction. Accordingly, the trial court denied the guardian the relief she sought but did, however, provide that on a showing of necessity the court would approve withdrawals from the account. However, the court also required that the guardian reimburse any amounts withdrawn from the account with other assets in Mrs. Matt's estate when such became available. The bank was restrained from honoring any requests for withdrawals from the account without the court's approval. The guardian appeals from these judgments and orders. Mrs. Preston is the respondent. The bank is not a party to the appeal.
The statute applicable to joint accounts in mutual savings banks is RCW 32.12.030(3), which reads:
(3) After any deposit shall be made by any person in the names of such depositor and one or more other persons and in form to be paid to any of them or the survivor of them, such deposit and any additions thereto made by any of such persons after the making thereof, shall *126 become the property of such persons as joint tenants, and the same, together with all dividends thereon, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetimes or to the survivor or survivors and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to such savings bank for all payments made on account of such deposit prior to the receipt by such savings bank of notice in writing not to pay such deposit in accordance with the terms thereof. The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of all depositors to vest title to such deposit and the additions thereto in the survivor or survivors. (Italics ours.)
Five of appellant's 18 assignments of error raise the crucial issue in this appeal: To what extent does RCW 32.12.030(3) govern the rights of codepositors inter se to the joint account during their lifetimes? In view of our decision on this issue, it is unnecessary to consider others raised by appellant.
[1, 2] Appellant contends that the first sentence of this statute raises a rebuttable presumption of intent to create in the codepositors present joint tenancy interests in the account during their lifetimes; that the "conclusive evidence" provision of the last sentence governs codepositors' rights inter se only on the death of one of them. In support of her position, appellant cites Winner v. Carroll, 169 Wash. 208, 13 P.2d 450 (1932); and Moskowitz v. Marrow, 251 N.Y. 380, 167 N.E. 506, 66 A.L.R. 870 (1929). Appellant thus contends that the trial court erred in considering the signature card as conclusive evidence of the parties' intent, in not considering other evidence, and in failing to make an independent finding of the parties' actual intent. Respondent replies that the statements in Winner v. Carroll, supra, on which appellant relies are dicta, and in any event the "conclusive evidence" provision also applies when the savings bank is a party to the action. Pointing out that the bank is a party to this action, respondent asserts that the *127 court below did not err in refusing to consider the parties' actual intent an issue in the dispute.
In Winner v. Carroll, supra, we said, at 218:
Construing the provisions of the mutual savings bank act of 1915 (Rem. Comp. Stat., § 3348, subd. 2) [now RCW 32.12.030(3)], it is our conclusion that a deposit of the nature involved in this case presumptively creates an estate in joint tenancy with the attendant right of survivorship; that the presumption may be rebutted during the lifetime of both depositors, but that upon the death of either depositor the presumption, in the absence of fraud or undue influence, becomes conclusive in any action or proceeding to which the bank or the surviving depositor is a party.
This was, as respondent points out, unnecessary to the decision in that case. However, the California and New York courts reached the same conclusion with respect to identical statutes. See Paterson v. Comastri, 39 Cal.2d 66, 244 P.2d 902 (1952), wherein it is stated, at 71:
This section ... has been construed ... to set up two presumptions: First, that a deposit in the names of the depositor and another person "in form to be paid to" either or the survivor of them, becomes the property of such persons as joint tenants. This first presumption is not conclusive, and may be overcome by proof that the owner-depositor, when making the deposit, had no intention to create a true joint tenancy. The second presumption, that in the absence of fraud or undue influence, it was the intention of the depositors to vest title in the survivor, is conclusive. In order that the conclusive presumption may be applicable, however, there must be survivorship, ....
And, see Moskowitz v. Marrow, supra, on which we relied in the Winner case. Four other states have identical or nearly identical statutes to RCW 32.12.030(3): Alaska, Arkansas, Connecticut, and Nevada. Of these, the Connecticut court is apparently the only one which has been called upon to consider the issue before us. That court reached the same conclusion as we did in Winner, supra, Grodzicki v. Grodzicki, 154 Conn. 456, 226 A.2d 656 (1967), at 463:

*128 The language of the statute does not determine the respective rights of the parties inter vivos. The presumption created by the second sentence ... of the statute has no application to an action between the parties when all of them are alive.
The reasons for adopting such a construction have been best stated by Cardozo, C.J., concurring in Moskowitz v. Marrow, supra, at 397:
The sentence is as significant for what it omits as for what it says. There is no statement that the form is to be taken as conclusive evidence in any action or proceeding to which either depositor is a party. It is to be conclusive evidence only in an action or proceeding in which the bank or the surviving depositor is a party.... The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, but that after the death of either leaving a deposit then subsisting, the presumption becomes conclusive as to the title of the survivor.
A reading of the statute that would make the presumption irrebuttable except within these limits would do violence to intention and foster litigation. It would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula.... It would foster litigation, for each of the two depositors, the one opening the deposit as fully as the other, would be subject to an accounting for moneys afterwards withdrawn, and forced to make division on the footing of equality.
This court has indirectly approved the conclusions reached in the Winner case no less than five times. Kaufman v. Kaufman, 60 Wn.2d 1, 371 P.2d 535 (1962); In re Green's Estate, 46 Wn.2d 637, 283 P.2d 989 (1955); Munson v. Haye, 29 Wn.2d 733, 189 P.2d 464 (1948); Toivonen v. Toivonen, 196 Wash. 636, 84 P.2d 128 (1938); In re Bush's Estate, 195 Wash. 416, 81 P.2d 271 (1938). No reason has been suggested, nor does any occur to us, which would justify a repudiation of Winner.
Accordingly, we adhere to the Winner dicta and hold that during the lifetimes of codepositors to a joint account, at least with respect to disputes inter se to the account, *129 RCW 32.12.030(3) raises only a rebuttable presumption that the parties intended to create a joint tenancy in the account. We reiterate what was said in Kaufman, at 7: "The creation of an account in the nature of a joint tenancy, with the right of survivorship annexed, depends upon the intent of the parties; ...."
[3] Respondent, however, contends that the conclusive evidence portion of RCW 32.12.030(3) applies to the case before us because the bank in which the joint account was opened by Anna Matt and Mrs. Preston was made a party-defendant to this action. Respondent points to the underscored portions of the statute:
The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of all depositors to vest title to such deposit and the additions thereto in the survivor or survivors. (Italics ours.)
There is no doubt that the original and still a primary purpose behind statutes of this nature is to protect the depository institution by insulating it from disputes with the depositors. See, e.g., Munson v. Haye, supra; In re Iver's Estate, 4 Wn.2d 477, 104 P.2d 467 (1940). These statutes do so by permitting the institution to pay to one depositor's order absent written instructions to the contrary. In view of this purpose we are satisfied that the legislature intended the conclusive evidence provision to be applicable merely because the bank is a party only when it has a substantial interest in the outcome of the action. The legislature did not intend that the mere joinder of the depository institution called into play the conclusive evidence provision when the institution is a stakeholder and nothing more. In this case it is clear that the bank was only a stakeholder.
Finally, respondent contends that parol evidence is not admissible to vary the contents of the signature card. Since the signature card in this case provided for a joint tenancy, *130 respondent concludes that intent was, because of the parol evidence rule, no longer a factual issue and therefore the trial court did not err in failing to look outside the signature card. She cites Hill v. Badeljy, 107 Cal. App. 598, 290 Pac. 637 (1930), which we quoted in Winner v. Carroll, supra, at 217:
"The question involved in cases of this character is the intention of the parties making the deposit and where such intention is evidenced by a written agreement, as was done in the case at bar, this question of intention ceases to be an issue and the courts are bound by the written agreement....
"Furthermore, in any action between the depositors or the bank during the lifetime of both depositors, in the absence of fraud or mistake, parol evidence is not admissible to change the terms or the legal effect of such a written instrument where it is in no respect uncertain or ambiguous....
It should be observed that the California Supreme Court, in Paterson v. Comastri, supra, considered this issue and decided to the contrary, thus superseding Hill v. Badeljy, supra.
[4] We shall discuss this issue by assuming that the signature card in this case is unambiguous within the meaning of the parol evidence rule. The essence of respondent's contention is that when the codepositors sign a signature card for a joint account they thereby enter into a contract and the parol evidence rule becomes applicable. In Munson v. Haye, 29 Wn.2d 733, 189 P.2d 464 (1948), we have pointed out, however, that, at 741:
It must be remembered that two transactions are involved in the formation of any account involving more than one depositor: the transaction between the named depositors, and the transaction between the institutions receiving the funds and the depositors. Depositors usually sign an agreement with a bank covering the terms on which withdrawals may be made, and statutory provisions enacted for the protection of the bank frequently become a part of that agreement. Such an agreement with a bank does not necessarily have any bearing upon the transaction or agreement between the depositors *131 themselves. What that transaction may be is a matter of intent or agreement between the depositors.
See also Kaufman v. Kaufman, supra. In the Kaufman case, which involved a signature card much more clear than the one involved in this case, the court still regarded intent as a factual issue to be determined from all the evidence, not merely from the signature card. While it is true that this court has occasionally treated the signature card as evidence of a contract between the depositors, we have always considered parol evidence in attempting to ascertain whether the parties to the signature card actually intended to create a joint tenancy in the account, whenever such evidence was available. See, e.g., Kaufman v. Kaufman, supra; In re Webb's Estate, 49 Wn.2d 6, 297 P.2d 948 (1956); In re Green's Estate, supra; Tacoma Sav. & Loan Ass'n v. Nadham, 14 Wn.2d 576, 128 P.2d 982 (1942).
There is an annotation on this issue in which the author concludes that the majority rule is that parol evidence is admissible to establish actual intent of depositors which have both signed a signature card providing for a joint tenancy in a joint account. Parol evidence rule as applied to deposit of funds in name of depositor and another, Annot., 33 A.L.R.2d 569 (1954). The authorities cited in the note amply support the author's conclusion. A substantial number of courts adhere to the minority rule and hold parol inadmissible when both parties have executed a signature card providing by its terms for a joint tenancy. However, most of these courts so hold without giving much attention to the issue. See e.g., In re Harvey's Estate v. Huffer, 125 Ind. App. 478, 126 N.E.2d 784 (1955); Walsh v. Bailey, 41 Del. Ch. 420, 197 A.2d 331 (1964). Some rely on Matthew v. Moncrief, 135 F.2d 645, 149 A.L.R. 856 (D.C. Cir.1943). See, e.g., Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817 (1950). But Matthew, was later overruled in Murray v. Gadsden, 197 F.2d 194, 33 A.L.R.2d 554 (D.C. Cir.1952), and Harrington v. Emmerman, 186 F.2d 757 (D.C. Cir.1950). At least two other jurisdictions have first ruled parol inadmissible but on later consideration *132 ruled it admissible. In re Schneider's Estate, 6 Ill.2d 180, 127 N.E.2d 445 (1955), overruling Illinois Trust & Sav. Bank v. Van Vlack, 310 Ill. 185, 141 N.E. 546 (1923); Paterson v. Comastri, 39 Cal.2d 66, 244 P.2d 902 (1952), rejecting Henry v. Bank of America, 8 Cal. App.2d 353, 47 P.2d 1068 (1935), and Tobola v. Wholey, 75 Cal. App.2d 351, 170 P.2d 952 (1946).
We agree with the majority view. It makes little sense to hold, as we do, that during the lifetime of the depositors the execution of a signature card in the statutory form raises a rebuttable presumption that the depositors intended to create a joint tenancy, but then rule that parol evidence is not admissible to rebut the presumption. Paterson v. Comastri, supra; Greener v. Greener, 116 Utah 571, 212 P.2d 194 (1949). This is especially true when it is remembered that the signature card is invariably in a form provided by the depository institution which has undoubtedly drafted it to protect the institution rather than express the terms of an agreement between the depositors. It seems anomalous to argue that this form, when executed by the depositors, is conclusive as to the intention of the parties as between themselves, when this court adheres to the proposition that there are two different transactions involved, one between the bank and the depositors, and one between the depositors. Cf. Murray v. Gadsden, supra, holding that parol evidence was admissible to prove that the signature card did not express the true intention of the depositors. The court relied on the equitable exception to the parol evidence rule which permits an examination into the object behind the execution of an instrument and cited cases so holding.
The judgment and resulting orders are vacated. The case is remanded to the trial court for the purpose of making a finding on the factual issue of the intent of Anna Matt and Mrs. Preston when the joint account was created. Further proceedings not inconsistent with our decision and the trial court's ultimate finding are authorized. Costs of appeal will abide the result.
FINLEY, C.J., HILL, HUNTER, and NEILL, JJ., concur.
NOTES
[*] Reported in 449 P.2d 413.