[No. 33426.    Department Two.    May 24, 1956.]

*In the Matter of the Estate of* STANLEY F. WEBB, *Deceased.* JEANNETTE R. WEBB, *as Executrix, Respondent, v.* WILLIAM A. KIDDER, *as Administrator, et al., Appellants.*[1]

[1]Reported in 297 P. (2d) 948.

*Lewis A. Bell* and *Clarence J. Coleman,* for appellants.

*O. D. Anderson* and *J. P. Hunter,* for respondent.

HILL, J.—We are here concerned primarily with the effect of the deposit of community funds by a member of the community in a joint account with a person not a member of the community, such deposit being payable, by the terms of the joint account, to either or the survivor of them. Also, we have before us the status of a joint account with the right of survivorship, in a national bank, prior to June 7, 1951, the effective date of chapter 18, Laws of 1951, p. 36.

William A. Kidder, a married man, and Stanley F. Webb, a bachelor, were half brothers, very close friends, and hunting companions. Both lived in Everett, and for some fifteen years prior to 1947 Webb had lived in the Kidder home. They planned to own and operate a chicken ranch together when Kidder retired from the fire department (which could have been in 1955). For the purpose of accumulating funds for the purchase of such a ranch, a joint savings account was opened in the First National Bank of Everett. The first deposit, made March 16, 1951, was $4,585, made up of $2,585 furnished by Webb and $2,000 furnished by Kidder. The deposit was made by the latter, and he is the only one who signed the signature card at that time. Although deposits were made by both parties from time to time, there is evidence that as late as October, 1953, a signature card had not been signed by Webb; certainly he had not signed it by August 19, 1952. But the card, signed by both Kidder and Webb, was in the bank's possession when Webb died, May 29, 1954.

The card reads as follows:

"71791                                    Joint Savings Account
"It is understood and agreed by the undersigned that the money now on deposit or hereafter deposited in
The First National Bank of Everett, Everett, Washington in the name of.............................................. and............................................................
is a joint account payable on either signature and to the survivor of either. . . .
"The following signatures are authorized on this account:
Signature:  S. F. Webb
Signature:  W. A. Kidder  . . ."

The amount on deposit at the time of Webb's death was $8,895.60. Of this total, $4,850.85 represented funds furnished by Webb together with accumulated interest thereon, and $4,044.75 represented funds furnished by Kidder together with accumulated interest thereon. Kidder, as the survivor, drew out the entire amount and claims it by "right of survivorship." He was appointed administrator of Webb's estate and did not inventory the joint account in the probate proceeding, although he did, as required by statute, report the existence of the joint account to the state inheritance tax and escheat division.

Lester E. Webb, a brother of Stanley F. Webb and one of his heirs at law, sought in the probate proceeding to compel Kidder to inventory Webb's interest in the savings account as an asset of the estate. After Lester E. Webb died, his widow, Jeannette R. Webb, as executrix of his estate, was substituted for him and sought the same relief.

The trial court found that $4,850.85 of the money in the account belonged to Stanley F. Webb, and entered an order directing Kidder, as administrator of his estate, to inventory that amount as an asset of the estate. From that order, Kidder appeals as administrator and he and his wife appeal individually and as a marital community.

Section 1 of chapter 18, Laws of 1951, p. 36, effective June 7, 1951, provided that deposits in a national bank (and certain other banks) made

". . . by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them . . . shall, in the absence of fraud

or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."

We hold that this statute was not retroactive, and that it had no application to accounts opened prior to the effective date of the act. *In re Wind's Estate* (1948), 32 Wn. (2d) 64, 69, 200 P. (2d) 748; *State ex rel. Thorp v. Devin* (1946), 26 Wn. (2d) 333, 340, 173 P. (2d) 994.

We have held, in the absence of such a statute and despite another statute abolishing the right of survivorship as an incident to joint tenancy (Laws of 1885, § 1, p. 165; Rem. Rev. Stat., § 1344), that parties can, by express contract, create a joint tenancy with a right of survivorship. *In re Iver's Estate* (1940), 4 Wn. (2d) 477, 104 P. (2d) 467. In that case, referring to community funds deposited by a husband and wife in a joint account in a national bank in Spokane, where the deposit agreement specified that each depositor's interest was joint and several in the amount of the account and that the death of one should not affect the right of the other to withdraw the entire account, we said (p. 487):

"There is no suggestion of fraud, connivance, undue influence, or other disintegrating force employed in the execution of the agreement. There is no evidence which militates against the natural and logical conclusion that the husband and wife, having made a joint account of the community funds, intended exactly what the agreement stated, namely, that during the lifetime of both either could withdraw any part of the funds, and that the death of one should not affect the right of the other to withdraw the entire amount. Each had a right *in praesenti*, which neither the death nor the disability of the other could change. We are of the opinion that, as to this deposit, the parties contracted to, and did, create a joint tenancy of the funds with the right of survivorship."

With reference to a deposit of community funds in a joint account in a national bank in Portland, Oregon, this court, referring to the deposit agreement, which provided that

deposits were payable to either depositor or the survivor of them, said (p. 487):

"This provision is not, in our opinion, quite so emphatic or effective as that in the Spokane deposit. Nevertheless, in view of the facts in this particular case, the relationship of the parties, and the nature of the funds, we still believe that the agreement sufficiently evidenced the intention of the joint depositors to create a joint tenancy with the right of survivorship."

We are not here concerned with a conclusive-evidence statute. We are concerned only with whether there is evidence that establishes that Kidder and Webb did not intend what their agreement states. In the language of some of our cases: Is there evidence that overcomes the presumption that they intended to create a joint tenancy with right of survivorship? *In re Green's Estate* (1955), 46 Wn. (2d) 637, 283 P. (2d) 989; *Munson v. Haye* (1948), 29 Wn. (2d) 733, 189 P. (2d) 464; *In re Bush's Estate* (1938), 195 Wash. 416, 81 P. (2d) 271; *Winner v. Carroll* (1932), 169 Wash. 208, 13 P. (2d) 450.

■ The trial court felt that the evidence that the parties were creating a fund with which they expected ultimately to purchase a chicken ranch was inconsistent with an intention to establish a joint tenancy with right of survivorship in the joint bank account.

We cannot agree with the trial court that Kidder and Webb did not actually make a contract. The fact that the fund was to be used for a specific purpose if both had lived is not inconsistent with a joint tenancy. Indeed, they might have intended, though that is not necessary, to own and operate the chicken ranch as joint tenants. They both signed a statement that they intended and agreed that the "money now on deposit or hereafter deposited . . . is a joint account payable on either signature and to the survivor of either." The account is identified by number, and the language is, in our opinion, as definite and certain as that used in either of the deposit agreements in the *Ivers* case.

The inference from the evidence that it was Webb's intention to create a joint tenancy with right of survivorship is particularly strong, and it is his money which is the bone of contention. There is no evidence, or suggestion of evidence, that Webb wanted anyone other than Kidder to have the money which he, Webb, deposited in the account. The long and close relationship between the two men and the fact that Kidder was the beneficiary of Webb's union insurance and of his union welfare account, each in the amount of one thousand dollars, support the conclusion that Webb desired and intended that Kidder have the money if he, Webb, died before they consummated their plan to buy a chicken ranch.

Both Kidder and Webb made deposits in the account. If the only money in it were Webb's, the evidence would not be sufficient to overcome the inference raised by the joint deposit agreement. *In re Green's Estate, supra.* Indeed, under such circumstances this would be a stronger case than *In re Green's Estate* in support of the deceased's intention to create a joint tenancy with right of survivorship.

Had Kidder and Webb both been unmarried men, or had Kidder deposited his separate funds in the account, we would have no hesitancy in saying that there is no evidence sufficient to overcome the logical and natural conclusion that their written contract evidences their intention to create a joint tenancy with right of survivorship. It is ironical that the only evidence which gives substance to the position taken by Webb's heirs concerning the effectiveness of the agreement between Kidder and Webb is that the money which *Kidder* deposited in the joint account was community property.

The trial court regarded this factor as decisive, feeling that Kidder never intended that his widow and children should not have the benefit of this money in the event of his death. It is our view, however, that if, as in *Toivonen v. Toivonen* (1938), 196 Wash. 636, 84 P. (2d) 128, we assume the right of the wife to recover community funds deposited by her husband in a joint account with a third person with

a right of survivorship, such a right on the wife's part is not decisive of the present case.

We start, as in insurance cases (see *Wilson v. Wilson* (1949), 35 Wn. (2d) 364, 367, 212 P. (2d) 1022), with the concept that the contract is valid and that the survivor is entitled to retain the amounts which he holds pursuant to the deposit agreement, "except to the extent that the community property law intervenes and prevents" him from exercising that right by virtue of a superior or overriding public policy. In the *Wilson* case, *supra,* we said:

"A careful review of all of the cases dealing with the effect of our community property law on contracts of insurance, from *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P. (2d) 27, 114 A. L. R. 531, through *California-Western States Life Ins. Co. v. Jarman,* 29 Wn. (2d) 98, 185 P. (2d) 494, and *In re Knight's Estate,* 31 Wn. (2d) 813, 199 P. (2d) 89, fails to disclose any case in which we have not recognized the validity of the insurance contract . . . and *given the contract effect up to the point that a provision of the policy was contrary to public policy as represented by our community property law.* And only in that event have we recognized that the representative of the community estate, usually the surviving spouse, has a right superior to that of the named beneficiaries to all or a portion of the proceeds of the policy.

"The widow's contention here is without support in any of our cases, although she relies upon *Small v. Bartyzel,* *supra* [27 Wn. (2d) 176, 177 P. (2d) 391]. That case, as have all others dealing with any phase of this subject, *recognized the validity of the insurance contract and gave it effect up to the point at which the disposition of the proceeds of the policy by the insured could not be given effect because of the superior rights of the representative of the community estate under our community property law.*" (Italics ours.)

█ Paraphrasing, we now hold that, where community funds have been deposited in a joint account with a right of survivorship in a person not a member of the community and the deposit agreement is in all other respects valid, the agreement will be given effect at least up to the point at which the rights of the survivor might have to yield to the superior rights of the surviving member of the community

or the representative of the community estate under our community property law.

We emphasize that we have assumed but not decided that, in such a case, the surviving spouse could prevail over the person with a right of survivorship in the joint account. The spouse here, being the wife of the surviving party to the deposit agreement, is not attempting to exercise such a right. No rights superior to those of Kidder can be asserted by Webb's heirs, and Kidder is entitled to the funds which were in the joint account in the First National Bank of Everett, by right of survivorship.

The judgment decreeing that $4,850.85 of the funds from the joint account are an asset of the estate of Stanley F. Webb is reversed, as is the order that William A. Kidder, as administrator of the estate of Stanley F. Webb, deceased, shall inventory that amount in the estate. It is directed that an order be entered denying the petition originally filed by Lester E. Webb in the Stanley F. Webb estate and now urged by Jeannette R. Webb, as executrix of the estate of Lester E. Webb, deceased.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.