[No. 36150.  Department Two.  May 17, 1962.]

VIOLA KAUFMAN, *Respondent,* v. LOWELL ROBERT KAUFMAN, *Appellant,* YAKIMA CITY AND COUNTY EMPLOYEES CREDIT UNION, *Defendant.*\*

\*Reported in 371 P. (2d) 535.

*Gordon Hanson,* for appellant.
*Felthous & Brachtenbach,* for respondent.

HAMILTON, J.—This is an action for a declaratory judgment, to determine the ownership of a joint account in the Yakima City and County Employees Credit Union.

The action was initiated by respondent, Viola Kaufman, the surviving spouse of Earl Kaufman, deceased, against appellant, Lowell Robert Kaufman, decedent's son by a former marriage. The Yakima City and County Employees

Credit Union was joined as an additional party defendant. Decedent's estate is not a party to this action.

The conflicting claims to the account in the credit union revolve around a change, prior to the death of Earl Kaufman, from a joint account with survivorship, standing in the names of Earl and Viola Kaufman, to a joint account with survivorship, standing in the names of Earl and Lowell Robert Kaufman.

From a judgment favorable to the surviving spouse, the son appeals.

The essential facts, in chronological order, appear to be:

On June 16, 1956, Earl and Viola Kaufman were married; Mr. Kaufman was regularly employed, the holder of several income-producing investments, and, except as hereinafter noted, maintained three cash accounts—a checking account, and two savings accounts with the Home Federal Savings and Loan Association of Yakima: No. 2216, in his own name, and No. 3439, in his name as trustee for Lowell Robert Kaufman (there is no evidence or contention that appellant ever owned or deposited any funds in this account); Mr. and Mrs. Kaufman moved into Mrs. Kaufman's home, where they continued residing until Mr. Kaufman's hospitalization in November, 1959, with Mr. Kaufman making the mortgage payments and otherwise providing the living.

On February 25, 1957, Mr. Kaufman closed out Home Federal Savings and Loan Association account No. 3439, which had a then balance of $1,598.42, and with said sum a new account, No. 4366, in the same depository, was opened in the names of Earl and Viola Kaufman. At this time, both Mr. and Mrs. Kaufman signed a membership application, providing, in part:

" . . . for the issuance of evidence of membership in the approved form in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common. . . . "

A pass book to this account, which was, until the latter part of 1959, kept available to both, was then issued in the names of and entitled:

4

"EARL & VIOLA KAUFMAN AS JOINT TENANTS WITH THE RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON."

This account, thereafter, with one withdrawal of $930, increased to $2,800.34.

On July 3, 1959, the sum of $2,000 was withdrawn from this account and deposited with additional party defendant credit union, in account No. 787, Mr. and Mrs. Kaufman then signing a membership card, reading as follows:

"JOINT SHARE ACCOUNT AGREEMENT

"The YAKIMA FIREMAN'S CITY EMPLOYEES Credit Union is hereby authorized to recognize any of the signatures subscribed hereto in the payment of funds or the transaction of any business for this account. The joint owners of this account hereby agree with each other and with said Credit Union that all sums now paid in on shares or heretofore or hereafter paid in on shares by any or all of said joint owners to their credit as such joint owners with all accumulations thereon are and shall be owned by them jointly with right of survivorship and be subject to the withdrawal or receipt of any of them and payment to any of them or the survivor or survivors shall be valid and discharge said Credit Union from any liability for such payment. Said joint owners do further agree that any amounts added to this account by reason of any Life Insurance shall be paid to the surviving joint tenant or joint tenants who are hereby designated as the beneficiary or beneficiaries of such insurance.

"Any or all of said joint owners may pledge all or any part of the shares in this account as collateral security to a loan or loans.

"The right or authority of the Credit Union under this agreement shall not be changed or terminated by said owners, or any of them except by written notice to said Credit Union which shall not affect transactions theretofore made.

"Dated: *July 3, 1959*   [signed] *Earl. E. Kaufman*⎤
Member's Signature⎢Joint
             [signed] *Mrs. Earl E. Kaufman*⎢Owners
"Joint Account No........................  ....................................⎦

"CONSENT OF SPOUSE

" (To be completed if joint tenant or joint tenants are other than the spouse of member)

"Approved and consented to

"Signature of Spouse..............................................

"Dated: ......................, 19........  Spouse of........................................."

On November 5, 1959, Mr. Kaufman was hospitalized for a heart condition.

On, or subsequent to, November 18, 1959, appellant contacted an attorney for his father, following which Mr. Kaufman carried on discussions with the attorney relative to a divorce and changing his will.

On December 14, 1959, appellant appeared at the credit union office and orally advised that his father wished to change account No. 787 to a joint account between Earl and Lowell Robert Kaufman. At that time, appellant, in response to inquiry, advised the credit union that Earl and Viola Kaufman were "in the process of being divorced" (according to his testimony) or "were divorced" (according to the testimony of the credit union witness). He was thereupon given a card identical to the one hereinabove set forth to be signed by his father and himself.

On December 15, 1959, appellant returned the card, signed by his father and himself, and, thereafter, without the knowledge or consent of respondent, account No. 787 was changed on the books of the credit union to show appellant, instead of respondent, as the "joint owner" with Earl Kaufman. So far as the record shows, the pass book, being identified only by the number of the account, was neither changed nor reissued.

On December 28, 1959, Earl Kaufman verified a divorce complaint, which was then served on respondent. At the same time, he executed a new will devising all of his property to his two sons.

On February 19, 1960, respondent served and filed a motion, affidavit, and order to show cause in the divorce proceeding, seeking monthly support, temporary attorney's fees, and costs, listing, in support thereof, the community bills, her costs of living, and the assets "owned by my husband," which included the credit union account.

On February 22, 1960, Earl Kaufman died, and, thereafter, upon notice from respondent as to the marital status, the credit union "froze" account No. 787.

The trial court, following three days of testimony, rendered an oral decision, and subsequently entered findings

of fact, finding, *inter alia*: (a) the funds used in opening credit union account No. 787 were joint funds of Earl and Viola Kaufman; (b) the form and content of the "Joint Share Account Agreement" card, including the "Consent of Spouse" portion, had been adopted by the credit union, and was in regular use for all such accounts; (c) Earl and Viola Kaufman voluntarily executed said agreement and were bound thereby; (d) appellant was advised, by the credit union, that the requested change in account No. 787 required the consent of respondent; (e) appellant falsely represented that Earl and Viola Kaufman were divorced; and (f) but for such misrepresentation the credit union would not have permitted the change, without the consent of respondent.

From its findings, the trial court, in essence, concluded: (a) the purported change of December 15, 1959, was null and void; and (b), as between the parties, respondent was the owner and entitled to the proceeds of credit union account No. 787.

Appellant makes some twenty assignments of error directed to the trial court's findings, conclusions, and judgment, and to its refusal to enter appellant's proposed findings of fact and judgment. In his brief and argument, however, appellant condenses such assignments to eight contentions, which, in turn, may be reduced to essentially two principal questions: (1) what was the status of the account in question prior to December 14, 1959; and (2) did the action of the appellant and Earl Kaufman, on December 14 and 15, 1959, constitute a change in the status of the account.

As a prelude to answering the questions presented by appellant's assignments, an examination of the prior decisions of this court demonstrates we have held:

(1) In the formation of any account involving more than one depositor, two transactions are involved, to which all parties must, expressly or constructively, assent: The transaction between the depositors, and the transaction between the depositors and the depository. *Munson v. Haye,* 29 Wn. (2d) 733, 189 P. (2d) 464.

(2) The creation of an account in the nature of a joint tenancy, with the right of survivorship annexed, depends upon the intent of the parties; and, as between the depositors, the making of a deposit, in the nature of a joint tenancy with survivorship, gives rise to a rebuttable presumption of the requisite intent, both during the lifetime of the codepositors, and, except where otherwise provided by statute, following the death of one. *Munson v. Haye, supra; In re Green's Estate,* 46 Wn. (2d) 637, 283 P. (2d) 989; *In re Webb's Estate,* 49 Wn. (2d) 6, 297 P. (2d) 948.

(3) That, conditioned upon the intent of the parties, such account may be created by: (a) express contract, with or without enabling statutes (*i.e.,* RCW 30.20.015, banks; RCW 31.12.140, credit unions; RCW 32.12.030, mutual savings banks; RCW 33.20.030, savings and loan associations), and despite the statute (RCW 11.04.070) abolishing the right of survivorship as an incident of joint tenancy (*In re Ivers' Estate,* 4 Wn. (2d) 477, 104 P. (2d) 467; *Tacoma Sav. & Loan Ass'n v. Nadham,* 14 Wn. (2d) 576, 128 P. (2d) 982; *In re Green's Estate, supra; In re Webb's Estate, supra*); or (b) the making of a deposit in the *form* prescribed by such enabling statutes, with or without express agreement between the depositors. *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45; *Nelson v. Olympia Fed. Sav. & Loan Ass'n,* 193 Wash. 222, 74 P. (2d) 1019; *Munson v. Haye, supra.*

(4) Where two or more depositors, in fact, intend the establishment of a joint account, in the nature of a joint tenancy, with the right of survivorship annexed, without other conditions, it vests in each, immediately, an undivided interest in the whole account. *In re Peterson's Estate, supra; In re Ivers' Estate, supra.*

We turn, then, to the first question raised by appellant's assignments, that of the status of credit union account No. 787, on or prior to December 14, 1959. We will assume, as appellant contends, the source of the funds deposited in account No. 4366 to be the separate property of Earl Kaufman.

It is appellant's contention, in substance, that because the funds used were the separate funds of Earl Kaufman, respondent has failed to sustain her burden of proof in demonstrating that Earl and Viola Kaufman intended account No. 787 to be a joint account, in the nature of a joint tenancy, with the right of survivorship. On the contrary, appellant urges the evidence indicates, and would support findings, that Earl and Viola Kaufman kept separate checking and savings accounts, and otherwise maintained the status of their separate property; respondent's name was upon the Home Federal Savings and Loan Association account No. 4366 and the credit union account solely for convenience or agency purposes; and, by her affidavit in the divorce proceedings, respondent estopped herself from asserting the joint status of the credit union account.

Appellant bottoms his contention upon the case of *Munson v. Haye, supra,* wherein this court stated [p. 743]:

"The very strongest position that respondents can contend for is that when Mr. and Mrs. Munson 'jointly became members in an association,' a presumption arose, under the provisions of Rem. Rev. Stat. (Sup.), § 3717-41, that they were joint tenants. That presumption was met and destroyed when proof was presented that the funds deposited were community property. . . ."

We went on to say in the *Munson* case, however [p. 743]:

" . . . The parties here signed nothing which indicated an intention to create a joint tenancy, and the statute relied upon makes no reference to joint tenancies."

■ One of the distinguishing features between the instant case and the *Munson* case is that here Earl and Viola Kaufman executed, with respect to the funds involved, both the Home Federal Savings and Loan Association membership application and the credit union joint account agreement, hereinabove set forth.

A second distinction lies in the fact that the *Munson* case involved community funds, whereas the instant case involves separate funds.

Under these circumstances, we are of the opinion that

*In re Webb's Estate, supra,* is the more apropos. In the *Webb* case, we state [pp. 10, 11]:

" . . . We are concerned only with whether there is evidence that establishes that Kidder and Webb did not intend what their agreement states. . . .

"Had Kidder and Webb both been unmarried men, or had Kidder deposited his separate funds in the account, we would have no hesitancy in saying that there is no evidence [referring to the evidence in that case] sufficient to overcome the logical and natural conclusion that their written contract evidences their intention to create a joint tenancy with right of survivorship. . . ."

█ A reading of the record satisfies us that, confronted with conflicting evidence, circumstances, and inferences, the trial court gave careful consideration to appellant's contentions, the evidentiary matters urged in support thereof, and appellant's proffered findings. Upon the factual issue of intent, the trial court found adversely to appellant's position, and rejected appellant's proffered findings. We will not substitute our findings, under such circumstances, for those of the trial court. *Hallin v. Bode*, 58 Wn. (2d) 280, 362 P. (2d) 242.

Accordingly, we accept the trial court's finding that Earl and Viola Kaufman intended to, and did, establish credit union account No. 787 as a joint account, in the nature of a joint tenancy, with the right of survivorship annexed.

We come, then, to the second question presented by appellant's assignments of error, that is, the effect, if any, of the substitution, as co-owner or cotenant on account No. 787, of the name of appellant, for that of respondent.

At the threshold of any consideration of appellant's contentions, we are met with the trial court's finding, made upon conflicting evidence, of appellant's misrepresentation, to the credit union, regarding the marital status of Earl and Viola Kaufman. It further appears from the trial court's findings that such representation induced the credit union's assent to the proposed change, without the knowledge or consent of respondent. While appellant attacks such findings, an examination of the record reveals them to be

supported, in all respects, by substantial evidence. They will not, therefore, be disturbed upon appeal. *Hallin v. Bode, supra.*

■ As hereinabove indicated, we have held the assent of the depository to be an integral part in the formation of a joint account. Assent to an agreement, induced by fraud, is, at least, a voidable one. 12 Am. Jur., Contracts § 146, p. 638. The trial court has, upon substantial evidence before it, voided the agreement.

Appellant, however, contends that the action of himself and Earl Kaufman constituted a withdrawal of the funds, or a transfer of the account, on the part of Earl Kaufman, as a co-owner, and that, in any event, contractually or in law, the consent of respondent was not required. Appellant thus, in effect, questions the materiality of the misrepresentation.

Appellant premises his contention that Earl Kaufman's action, through appellant, constituted a withdrawal or transfer, for which respondent's consent was not required, under the bylaws of the credit union; under RCW 31.12.140, relating to such accounts in credit unions, which provides, in part:

". . . unless written instructions to the contrary are given to the credit union relative to such account, and written receipt thereof acknowledged by such credit union, any of such persons may exercise the rights of ownership, transfer and withdrawal incidental to such ownership without the other joint holders joining therein, . . .";

under the joint share account agreement, stating the account to be: ". . . subject to the withdrawal or receipt of any of them and payment to any of them . . ."; and, finally, under that portion of *In re Green's Estate, supra,* wherein this court stated [p. 640]:

". . . But where, as here, it is clear that it is the intention of the owner of an account and of the savings and loan association to change the status of an existing account by making an additional party or parties 'joint tenants with right of survivorship,' such a change in status may be effected without the formality of closing the old account and opening a new. . . ."

We cannot agree with appellant's contentions for the following reasons: (a) the action of Earl Kaufman and appellant did not constitute an act of "ownership," "withdrawal," "receipt," or "transfer" within the spirit or the intent of the bylaws, statute, or the deposit agreement; (b) *In re Green's Estate, supra,* is readily distinguishable from, if not, in fact, contrary to appellant's contentions; and (c) respondent's existing interest in the joint account could not be terminated, revoked, or divested, without her consent, in the manner here attempted. *O'Connor v. Dunnigan,* 158 App. Div. 334, 143 N. Y. Supp. 373; *Moskowitz v. Marrow,* 251 N. Y. 380, 167 N. E. 506, 66 A. L. R. 870; *State v. Gralewski's Estate,* 176 Ore. 448, 159 P. (2d) 211, 161 A. L. R. 66; *Nusshold v. Kruschke,* 176 Ore. 697, 159 P. (2d) 819.

In the language of the Oregon Supreme Court, in *State v. Gralewski's Estate, supra* [p. 451]:

"It is our opinion that to sustain the appellants' position would be to approve the unauthorized invasion by one of another's legal rights. The interests of John and Kurt Gralewski in the funds were, as we have said, joint and equal, and the latter could not by his unilateral action divest his father of his interest."

We, accordingly, agree with the trial court's conclusion that the purported change in status of the account in question was ineffectual.

The judgment is affirmed.

FINLEY, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.