[No. 36418. Department Two. August 29, 1963.]

In the Matter of the Estate of MARY LEINWEBER, *Deceased.*
HENRY E. LEINWEBER *et al., Respondents,* v. REUBEN
LEINWEBER, *as Executor, Appellant.*[*]

*Savage, Nuxoll & Brennan* and *Smith, Smith & Smith,* for appellant.

*F. L. Stotler, J. D. McMannis,* and *R. G. McBroom,* for respondents.

WEAVER, J.—Appellant, executor of the estate of his mother, Mary Leinweber, appeals from an order directing that he amend the estate inventory or

". . . file an Amended Inventory, including the two bank accounts as assets of the estate, and deleting therefrom any and all survivorship references."

The bank accounts in question were listed in the estate inventory "for inheritance tax purposes only" as follows:

[*]Reported in 384 P. (2d) 856.

"10. Joint checking account at The Bank of Endicott in the names of Mary Leinweber and/or Reuben Leinweber with right of survivorship. ........................ $22,059.09

"11. Joint savings account at The Bank of Endicott in the names of Mary Leinweber and/or Reuben Leinweber with right of survivorship. ........................ 11,184.30"

The signature card, dated January 15, 1957, upon which the bank relied in handling the checking account, bears the following:

(a) "Title of Account ......... Leinweber, Mrs. Mary
    Address ............... Endicott, Washington"[1]

(b) "Signature .............. *Mary Leinweber*
    Guardian .............. *By Reuben Leinweber*"[1]

(c) In two places, the printed words "Joint Tenancy With Right of Survivorship" have been circled with a pen. This was done by the cashier of the bank when the signature cards were signed.

(d) On the reverse side, there appears a printed agreement, entitled, "If Joint Tenancy With Right of Survivorship." The agreement concludes with the sentence: "The signatures which you will honor are on the reverse side of this card." It is signed:

*"Mary Leinweber*
*By Reuben Leinweber"*.[1]

The signature card for the savings account is identical with the card establishing the checking account except it identifies the account as "Savings", represented by passbook No. 976.

The savings account was commenced January 15, 1957, with a deposit of $30,000 from Mrs. Leinweber's checking account. There was one withdrawal of $20,000 on June 3, 1958 (which we mention later); the inventoried balance represents the remainder plus accumulated interest.

---

[1] The italicized portion quoted is handwritten; the word "Guardian", the date, and the name and address of the depositor are typewritten; the balance of the card is printed. It is admitted that Mary Leinweber did not have a guardian, although an attempt to appoint one for her had been made in 1953.

Although the bank accounts in question were implemented by the signature cards of January 15, 1957, Mrs. Leinweber, who could neither read nor write the English language, nor sign her name, had been a depositor in the Bank of Endicott for many years.

Three previous signature cards are in evidence. She signed each with her mark witnessed by two witnesses. Each card, designating the account as hers, authorizes her son, Reuben Leinweber, to issue checks against the account, but, should she have occasion to sign checks she would do so by mark, with two witnesses.

Recently, we had occasion to examine in some detail the law of joint tenancies and the right of survivorship in bank accounts. In *Kaufman v. Kaufman*, 60 Wn. (2d) 1, 371 P. (2d) 535 (1962), decided subsequent to the trial court's decision of the instant case, this court said:

"In the formation of any account involving more than one depositor, two transactions are involved, to which all parties must, expressly or constructively, assent: The transaction between the depositors, and the transaction between the depositors and the depository. [citing authority]

"The creation of an account in the nature of a joint tenancy, with the right of survivorship annexed, depends upon the intent of the parties; and, as between the depositors, the making of a deposit, in the nature of a joint tenancy with survivorship, gives rise to a rebuttable presumption of the requisite intent, both during the lifetime of the codepositors, and, except where otherwise provided by statute, following the death of one. [citing authorities]

"That, conditioned upon the intent of the parties, such account may be created by: (a) express contract, with or without enabling statutes . . . or (b) the making of a deposit in the *form* prescribed by such enabling statutes, with or without express agreement between the depositors. [citing authorities]"

Insofar as applicable at the time the alleged joint tenancy accounts were established, RCW 30.20.015[2] provided:

"After any commercial or savings deposit shall be made in a . . . state bank . . . by any person in the

---

[2] The statute was amended by Laws of 1961, chapter 280, § 6.

names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit . . . shall become the property of such persons as joint tenants with the right of survivorship, : . . ." Laws of 1955, chapter 33, § 30.20.015.

■ The trial court based its decision on the second facet of *Kaufman, supra,* and concluded that the signature cards did not meet the requirements of the statute. We agree. The signature "Mary Leinweber by Reuben Leinweber" (written by Reuben Leinweber) designates only a bank account owned by Mary Leinweber upon which Reuben Leinweber had purported authority to draw. The cards do not designate an account " . . . in the names of such depositor and another person and in form to be paid to either or the survivor of them, . . . " and they are not signed by Mary Leinweber.

■ Further, the record does not support the first facet of the *Kaufman* case, *supra,* that there be an intent, express or implied, of the depositors to create a joint tenancy with right of survivorship. There is no evidence that Mrs. Leinweber authorized the January 15, 1957 signature cards or knew of them. One of the bankers testified that he and an interpreter called at her home to have her sign the cards; they were not admitted. He testified: " . . . we were there probably a matter of thirty seconds and that's about all."

In reaching this conclusion, we have not overlooked the fact that on June 3, 1958, a year and a half after the signature cards had been signed by Reuben Leinweber, he signed his mother's name by him, withdrew $20,000 from the savings account, and deposited it in her checking account. The transaction was carefully explained to her by an interpreter in the presence of one of the bankers. Mary Leinweber then signed a check with her mark, before witnesses, for $20,000 payable to Reuben Leinweber. This transaction is of no probative value in deciding the question of the instant case.

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.