[No. 38-40195-3.　　Division Three.　　February 11, 1970.]

M. AILEEN CULLIGAN, *Respondent*, v. OLD NATIONAL BANK OF WASHINGTON, *as Executor, Appellant.*

*Bernard J. Gallagher* and *George W. Young*, for appellant.

*Hamblen, Gilbert & Brooke* and *Wm. F. Nielsen*, for respondent.

MUNSON, J.—M. Aileen Culligan brings an action to enforce a claim for $16,200 against the estate of Walter J. Crowe, deceased, for services rendered in caring for him during the last 6 years of his life. The defendant, Old National Bank of Washington, executor of the estate of said deceased, counterclaims seeking the return of $6,416.25, the amount remaining in a joint-checking account with right of survivorship held by decedent and plaintiff at the time of decedent's death. The trial court, sitting without a jury, entered judgment in favor of plaintiff on her complaint in the amount of $10,800 and dismissed defendant's counterclaim. Defendant appeals.

The facts in support of plaintiff's claim indicate that she began her care of decedent shortly before the death of his sister in 1960 and continued until 6 weeks prior to his death in late December 1965. During that time, plaintiff performed various chores which, from late 1963 on, became quite burdensome and unpleasant. The care rendered to decedent by plaintiff included daily bathing and shaving, doing all of his laundry including soiled underwear and bedding (due to his incontinence in later years), ironing, daily dressing and undressing, trimming fingernails and toenails, haircuts, housecleaning, general errands including trips to Spokane, purchasing of food and other needs, daily preparation of meals, and regular trips to his home several times a day to check on his well-being. Plaintiff and decedent were longtime residents of Sprague, Washington; she

was the wife of decedent's nephew. Other relatives and heirs did not reside in Sprague and, with the exception of a few incidents, plaintiff was the only person who cared for decedent. Testimony of all parties is in accord that decedent appreciated the services being rendered by plaintiff. On several occasions decedent told others that she deserved all that he had.

In September 1960, while the services being rendered, if any, were minimal, decedent executed his will in which he devised to plaintiff his home, its furnishings and his personal car. He devised the balance of his estate among his nieces, nephews, a grandniece and a grandnephew. Plaintiff was aware of the provisions of the will relating to her and her husband. Although she never made demand for payments for services during the lifetime of decedent, plaintiff testified she did anticipate payment. In addition, the statement of facts indicates that Margaret Purvis, a niece and devisee of decedent, while testifying on behalf of defendant, acknowledged that plaintiff should be compensated for her services.

In March 1964, the heirs became concerned that decedent was unable to resist the pressures of salesmen, charitable solicitors, and at least on one occasion, was susceptible to being influenced by a matrimonially-inclined widow. His conduct and actions, such as manner of dress in public, as well as hallucinatory episodes where he conversed with deceased members of his family, led the heirs to believe there should be a guardian appointed for his estate. They sought medical confirmation and were given a letter by Dr. Richard T. Flaherty stating that in his medical opinion as of March 31, 1964 decedent was senile and in need of a guardian. The heirs then contacted a lawyer but were unable to agree upon who should be guardian. As a result, none was appointed.

In June 1964, plaintiff and decedent, with decedent's funds, opened a joint-checking account with right of survivorship at the Old National Bank of Washington. Employees of the bank, present when the account was opened,

testified from their observation of decedent's demeanor he appeared to comprehend all that transpired and that he understood the effect of the right of survivorship which was fully explained, in addition to other types of accounts. However, plaintiff did not acquaint the bank employees with the existence of the above letter from Dr. Flaherty. In fact, one employee testified had he known of the existence of such letter he would not have opened this type of joint account; rather, he would have referred decedent to his attorney.

Dr. Flaherty testified that even people who are senile do have lucid moments and when they appear normal they usually are normal.

As stated previously, plaintiff's care intensified with the passing of time due to decedent's physical condition up to approximately November 1, 1965 when, due to the death of her husband, she was unable to continue her intensive care. The services of a nurse were employed at the rate of $250 per month. These services continued for 6 weeks, at which time decedent was placed in a hospital, and within a few days passed away.

After decedent's death, plaintiff inquired of both the attorney representing the estate and the bank concerning the status of the money in the joint account. She was told by both that she was entitled to the money. The attorney testified that in giving this advice he had overlooked the letter from Dr. Flaherty. He thereafter made demand upon plaintiff, on behalf of the estate, for return of the money, which request plaintiff denied. Thereafter, plaintiff filed a claim for her services, which claim was denied; this suit was instituted.

■■ This case is comparable on its facts and in the application of the law relating to plaintiff's claim for remuneration, to *Jacobs v. Brock*, 66 Wn.2d 878, 406 P.2d 17 (1965). There is ample evidence to support the trial court's finding that plaintiff was entitled to be compensated for her services: (1) the services rendered were of great value; (2) there was a lack of mutuality of benefits; (3) the

services were rendered at the request of decedent and with his knowledge and approval; and (4) there was an actual or implied intention on the part of decedent to compensate plaintiff for said services and an expectation of remuneration on the part of plaintiff. Therefore, this court will not substitute its judgment for that of the trial court. *Leonard v. Washington Employers, Inc.,* 77 W.D.2d 273, 461 P.2d 538 (1969).

■ Defendant next urges that plaintiff's claim is barred by the 3-year statute of limitations (RCW 4.16.080) as being an implied contract not in writing. However, plaintiff's claim is based on continuous services and the statute did not commence to run until the implied contract was terminated. *Heasley v. Riblet Tramway Co.,* 68 Wn.2d 927, 937, 416 P.2d 331 (1966).

The trial court awarded plaintiff compensation at varying rates depending upon the quantity and nature of the services performed from 1960 through the entire year of 1965. Inasmuch as the evidence establishes that a professional nurse was retained to care for the decedent as of November 1, 1965 until his admission into the hospital, and that plaintiff's care thereafter was minimal at best, there is a lack of substantial evidence to support the finding that plaintiff was entitled to $300 per month for November and December 1965. Therefore, the judgment should be reduced by $600.

The trial court found decedent was competent at the time he entered into the joint-checking account with plaintiff and that he fully understood the meaning and the legal result of his actions. RCW 30.20.015 stated prior to 1967:

After any commercial or savings deposit shall be made in a national bank, state bank, trust company or any banking institution subject to the supervision of the supervisor of banking of this state, by any person in the names of such depositor and one or more other persons and in form to be paid to any of them or the survivor of them, such deposit and any additions thereto made by any of such persons after the making thereof, shall become the property of such persons as joint tenants with the right

of survivorship, and the same, together with all interests thereof, in the case of savings accounts, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetimes or the survivor or survivors. *The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of the depositors to vest title to such deposit and the additions thereto in the survivor or survivors.*

(Italics ours.)

■ *Kaufman v. Kaufman,* 60 Wn.2d 1, 371 P.2d 535 (1962) holds the creation of such an account depends upon the intent of the parties. The trial court found it was the intent of decedent and plaintiff to open a joint account with right of survivorship; that there was no fraud or undue influence involved. The trial court chose to believe those facts which support plaintiff and not to adopt as its findings those urged by defendant. There being substantial evidence to support the trial court's findings, this court will not substitute its judgment therefor. *Moss v. Vadman,* 77 W.D.2d 402, 410, 463 P.2d 159 (1969).

Judgment is modified and the cause remanded with instructions to reduce the judgment by the amount of $600.

EVANS, C. J., and GREEN, J., concur.

Petition for rehearing denied March 10, 1970.