[No. 9897-4-III. Division Three. December 27, 1990.]

*In the Matter of the Estate of*
OTTO J. MEYER.

SHARON MEYER, *Appellant,* v. LINDA MOORE,
*Respondent.*

---

*John R. Quinlan* and *Paine, Hamblen, Coffin, Brooke & Miller,* for appellant.

*Matthew K. Sanger* and *Salina, Sanger & Gauper,* for respondent.

THOMPSON, J.—Sharon Meyer, as personal representative, appeals the final decree of distribution entered in the estate of her late husband, Otto Meyer. At issue are (1) the ownership of $26,100.34 deposited in a credit union joint account in both Mr. and Mrs. Meyer's names, with right of survivorship, and (2) the existence of liens warranting reimbursement for community expenditures on property owned separately by Mr. Meyer. The trial court found against Mrs. Meyer on both issues. We reverse on the joint account, but affirm the remainder of the judgment.

In 1981, Otto Meyer discovered he had cancer. On March 28, 1982, after unsuccessfully undergoing various treatments, Mr. Meyer went to Salt Lake City to try another type of treatment. He participated in an outpatient program at the University of Utah Medical Center until April 10, 1982. On April 14, an artery in Mr. Meyer's leg ruptured and he was admitted to the University of Utah hospital. Mr. Meyer returned to Spokane on April 24, and was admitted to Sacred Heart hospital, where he remained until April 28. He then resided at his home until his death on May 10, 1982.

Mr. Meyer died intestate. He was survived by his second wife, Sharon Meyer, whom he had married in 1978. She

applied for and was granted letters of administration on July 19, 1982. Mr. Meyer was also survived by a 20-year-old daughter from his first marriage, Linda (Meyer) Moore.

Mrs. Meyer filed a preliminary inventory in August 1982, but did not file a petition for a decree of distribution until June 13, 1985. According to the petition, Ms. Moore was entitled to $1,822.35, after satisfaction of asserted equitable liens for reimbursement for community funds expended on Mr. Meyer's separate property and payment of probate costs. Ms. Moore challenged the inventory and filed objections to the petition.

The objections relevant to this appeal concern three items of property. We summarize:

1. Mr. Meyer owned as separate property stock in a private corporation (the Austin–Meyer Corporation) which was liquidated prior to his death. His attorney sent the proceeds in the form of a check in the amount of $26,100.34 to the Spokane Teacher's Credit Union on April 8, 1982, stating that Mr. Meyer wanted the funds placed in "your Silver Eagle account". The credit union obtained a share draft agreement signed by Mr. and Mrs. Meyer on April 17, 1982, while he was seriously ill in Utah. The funds were deposited in a joint account with right of survivorship.

Ms. Moore objected to Mrs. Meyer's characterization of this account as part of the community estate, of which Mrs. Meyer was to receive all under the laws of intestate succession.

2. Mr. Meyer owned a rental house on Empire Way in Spokane, which was purchased with community funds (Empire Way property). Mrs. Meyer had quitclaimed her interest in the house to Mr. Meyer in July 1981. The quitclaim deed also transferred "any interest therein which grantor may hereafter acquire".

Ms. Moore objected to Mrs. Meyer's claim of lien on the house for payments made out of community funds subsequent to the quitclaim and for work performed on

the property. She also challenged the lack of an accounting for the rental income derived from the property.

3. Mr. Meyer owned three real estate contracts. Ms. Moore challenged Mrs. Meyer's assertions that the community made payments toward the underlying obligations on these contracts. She also challenged Mrs. Meyer's claim that the profits from these contracts were commingled with community funds and lost their status as separate property. Ms. Moore asked for an accounting.

A hearing on Ms. Moore's challenges was held in September 1986. On December 15, 1986, the court filed a memorandum opinion ruling substantially in Ms. Moore's favor. Mrs. Meyer unsuccessfully moved for reconsideration. Findings and conclusions were entered in June 1987.

The court concluded proceeds from the dissolution of the Austin–Meyer Corporation were the separate property of Mr. Meyer. It also determined there was no "clear and unmistakable evidence . . . on the part of Otto J. Meyer to make a gift" of the proceeds of the Austin–Meyer Corporation to Mrs. Meyer. As for the Empire Way property and the real estate contracts, the court ordered Mrs. Meyer to render an accounting of all rents, issues and profits received and the actual expenditures of community funds.

In April 1988, Mrs. Meyer submitted an inventory and appraisal complying with the court's June 1987 findings and conclusions. She listed the Austin–Meyer proceeds as separate property, as the court had determined. She continued to assert a lien of approximately $10,000 for community expenditures against the Empire Way property and against two of the three real estate contracts for payments made with community funds.

Ms. Moore again objected. She pointed out that the inventory still did not provide evidence that any payments were made with community funds. The evidence at trial was that Mr. Meyer had more money coming in on the Empire Way property and from the three contracts, when considered together, than he had going out. Finally, Ms. Moore relied upon the 1981 quitclaim of the Empire Way

property, including after–acquired interests, from Mrs. Meyer to Mr. Meyer.

In her "Final Account and Petition for Distribution", Mrs. Meyer asked the court to resolve the issues relating to the Empire Way property and the real estate contracts. The court accepted the "Statement of Asset Valuation" prepared by Ms. Moore, which set the value of her one–half portion of her father's separate property at $31,500. From that amount, the court deducted pro rata funeral expenses, attorney fees, costs, and one–half of the personal representative's fee. In light of the increase in valuation of the estate distributable to Ms. Moore over the valuation set in the original inventory, the court also awarded her attorney fees. RCW 11.76.070.[1] The court ordered Mrs. Meyer to pay Ms. Moore $28,505.02, plus $5,500 in fees. Title to all property was confirmed in Mrs. Meyer, together with authority to liquidate as necessary to comply with the decree.

First, did the court err when it held that the proceeds from the Austin–Meyer liquidation were separate property, even though they had been deposited in a joint account in Mr. and Mrs. Meyer's names with right of survivorship?[2]

---

[1]RCW 11.76.070:

"**Attorney's fee to contestant of erroneous account or report.** If, in any probate or guardianship proceeding, . . . an erroneous account or report shall be rendered by any personal representative and any beneficiary of said trust or other interested party shall be reasonably required to employ legal counsel to resist said account or report as rendered, and upon a hearing an accounting shall be ordered, or the account as rendered shall not be approved, and the said personal representative shall be charged with further liability, the court before which said proceeding is pending may, in its discretion, in addition to statutory costs, enter judgment for reasonable attorney's fees in favor of the person or persons instituting said proceedings and against said personal representative . . .."

[2]Ms. Moore contends that in her final inventory, Mrs. Meyer agreed that the Austin–Meyer proceeds were separate property. Thus, Ms. Moore argues Mrs. Meyer is barred from challenging the disposition on appeal. We have reviewed the record and find nothing to support Ms. Moore's argument that Mrs. Meyer in effect entered a consent judgment when she submitted her final petition for distribution. She simply incorporated the court's findings regarding the Austin–Meyer account, as she was bound to do until those findings could be addressed in

Mrs. Meyer contends that under both the common law and the applicable statute in effect in April 1982, there existed a presumption that ownership of funds held in a joint account with right of survivorship vests in the survivor. *See Kaufman v. Kaufman*, 60 Wn.2d 1, 7, 371 P.2d 535 (1962); former RCW 31.12.140. In contrast, Ms. Moore argues Mrs. Meyer had the burden of proof, as the party asserting the existence of a gift, to show the transfer of the gift by clear, convincing, strong, and satisfactory evidence. *Doty v. Anderson*, 17 Wn. App. 464, 471, 563 P.2d 1307 (1977).

The trial court agreed with Ms. Moore, finding:

12. . . . [T]here does not appear to be any direction that the funds be placed in a joint account with right of survivorship until an agreement and application was returned to the credit union after signature on April 17, 1982, by both parties. At this time, Otto Meyer was very ill and of questionable competency. The placement of the money to a joint tenancy with right of survivorship account amounts to a gift of Otto's separate property to his spouse by way of the joint account. There is no documentation which indicates what events occurred between the date in which the check was sent and the date that the account was opened. It is unclear as to which account Otto intended to deposit the money, and as to whether it was his intent at all to establish a joint account with the personal representative. There is also some question of Otto's mental capacity to make such a gift where it was previously determined that he lacked the capacity to execute a Will,[3] and the testimony of all parties is that Otto Meyer was very ill and in considerable pain. *There is no clear and unmistakable evidence of an intention on the part of Otto J. Meyer to make a gift.*

(Italics ours.) We hold the trial court erred in applying the common law of gifts and requiring Mrs. Meyer to prove Mr. Meyer intended a gift. Instead, the presumption relative to

---

an appeal from a final judgment, and asked that the court decide the claims for reimbursement of community funds expended on the Empire Way property and the three contracts. Our analysis therefore focuses on the remaining contentions.

[3]The trial court was referring to a July 1982 letter sent by the estate's attorney to Ms. Moore, advising her that her father had been too sedated to execute a will.

joint accounts, as set forth in *Kaufman* and former RCW 31.12.140, governs here.

In *Kaufman*, the issue concerned the ownership of a joint share account in the Yakima City and County Employees Credit Union. The joint account was opened in the names of both husband and wife; the funds deposited in the account were the husband's separate property. After the husband died, the account became the focus of litigation between the surviving wife and the husband's son by a prior marriage. In resolving the parties' dispute, the court applied the rule that the making of a deposit in a joint account with right of survivorship gives rise to a rebuttable presumption of an intent to vest an undivided half interest in the funds in each depositor and, ultimately, ownership of the funds in the survivor. *Kaufman,* at 7 (citing *In re Estate of Webb,* 49 Wn.2d 6, 297 P.2d 948 (1956); *In re Estate of Green,* 46 Wn.2d 637, 283 P.2d 989 (1955); *Munson v. Haye,* 29 Wn.2d 733, 189 P.2d 464 (1948); *In re Estate of Peterson,* 182 Wash. 29, 45 P.2d 45 (1935)). *See also In re Estate of Davis,* 23 Wn. App. 384, 385, 597 P.2d 404, *review denied,* 92 Wn.2d 1026 (1979).

*Kaufman* is consistent with the statute in effect at the time the Meyers opened the account in question. Former RCW 31.12.140[4] (Laws of 1943, ch. 131, § 9, repealed by Laws of 1984, ch. 31, § 1) provided:

---

[4]In July 1982, the Financial Institution Individual Account Deposit Act, RCW 30.22, became effective. It applies to credit unions. RCW 30.22.040(12). RCW 30.22.100(3) reads: "Funds belonging to a deceased depositor which remain on deposit in a joint account with right of survivorship belong to the surviving depositors unless there is clear and convincing evidence of a contrary intent at the time the account was created."

At trial, Mrs. Meyer relied upon the presumptions in RCW 30.22.100(3) and in former RCW 30.20.015 (Laws of 1967, ch. 133, § 5), which applies to banking institutions. The trial court's finding, quoted above, indicates it rejected both statutes and the common law presumption and, instead, placed the burden on Mrs. Meyer to prove Mr. Meyer intended a gift. On appeal, Mrs. Meyer recognizes former RCW 31.12.140 as the applicable statute. Since her theory of the case has remained the same, *i.e.,* the presumption is that title to a joint account with right of survivorship vests in the survivor, citing the incorrect statute at trial does not prevent us from now considering the correct statute.

Two or more eligible persons may jointly become depositors or members in a credit union and such persons shall enjoy the same rights as though the deposits had been made by, or the shares issued to, an individual member, and unless written instructions to the contrary are given to the credit union relative to such account . . . any of such persons may exercise the rights of ownership, . . . and in the event of death, the survivor or survivors may exercise all rights incidental to such deposits or shares.[5]

A similar statute governing deposits in savings and loan associations has been interpreted as creating a rebuttable presumption that the deceased depositor intended the survivor to own the amount on deposit. *In re Estate of Douglas*, 65 Wn.2d 495, 503, 398 P.2d 7 (1965) (interpreting former RCW 33.20.030). *See also* Washington State Bar Ass'n, *Community Property Deskbook* § 39.5, at 39.3 (1977).

■ Thus, a rebuttable presumption existed here. The creation of the joint account gives rise to a presumption that Mr. Meyer intended that the survivor of the joint tenants would own the account. Ms. Moore had the burden of rebutting that presumption. *Cf.* 5 K. Tegland, Wash. Prac., *Evidence* § 65, at 178–79 (3d ed. 1989) (when the basic fact is proved, the court will assume the presumed fact, until rebutted by the opposing party). She has not done so.

The testimony regarding Mr. Meyer's intent focused on his capacity at the time the joint account was opened.[6] Mr. Meyer's attorney, John Zeimantz, testified that at Mr.

---

[5]The signature card signed by Mr. and Mrs. Meyer states in part: "The joint owners of this account hereby agree with each other and with the Credit Union that all sums now paid in on shares, or heretofore or hereafter paid in on shares by any or all of said joint owners to their credit as such joint owners with all accumulations thereon, are and shall be owned by them jointly, with right of survivorship and be subject to the withdrawal or receipt of any of them, and payment to any of them or the survivor or survivors shall be valid and discharge the Credit Union from any liability for such payment."

[6]Because of the way the trial court allocated the burden of proof, it was unnecessary for it to determine Mr. Meyer's capacity. It therefore did not enter findings resolving this issue. Instead, it relied solely on its determination that Mrs. Meyer had failed to establish Mr. Meyer intended to make a gift to her of

Meyer's request, he sent the proceeds from the liquidation of the Austin–Meyer Corporation to the credit union. The letter accompanying the proceeds directed deposit in a "Silver Eagle account" and stated Mr. Zeimantz assumed Mr. Meyer would advise the credit union of any further disposition of the funds. He testified that on each occasion when he and Mr. Meyer met, Mr. Meyer was in possession of all his faculties. Mr. Zeimantz disagreed with the estate attorney's conclusion, expressed in a July 1982 letter to Ms. Moore, that Mr. Meyer was too heavily sedated to execute the will Mr. Zeimantz had prepared. In his opinion, the reason the will remained unexecuted was that Mr. Meyer refused to accept the fact he needed to sign it.

Robin B. Cunningham, who worked with Mr. Meyer, had several conversations with Mr. Meyer while he was in Salt Lake City. Around April 22, 1982, she had a conversation with him regarding the money he had received from the Austin–Meyer Corporation. She testified Mr. Meyer wanted the Austin–Meyer funds to go to Mrs. Meyer, and that Mr. Meyer was lucid at the time she talked to him. Ms. Moore flew to Salt Lake City to see her father after his artery ruptured on April 14, 1982. She testified her father was taking painkillers and *at times* did not recognize her.

Far from rebutting the presumption, this evidence of continuing capacity reinforces it. Not even Ms. Moore stated her father's condition around the time he signed the share agreement was constant. The estate attorney's written opinion Mr. Meyer lacked capacity to execute his will is not helpful. His letter did not contain any facts basing the opinion on personal knowledge. Ms. Moore made no showing of undue influence or fraud, as was the case in *Doty,* upon which she relies. Consequently, we hold Mrs. Meyer, as the survivor, is the owner of the $26,100.34 in the credit union account.

---

the Austin–Meyer funds. This was error. The intent to make a gift was a secondary question, to be addressed only if the presumption of intent relative to joint accounts was rebutted. *See Doty.*

Second, did the court err when it failed to recognize the equitable liens for reimbursement asserted by Mrs. Meyer against the Empire Way property and the three real estate contracts?

■ As noted above, in 1981, Mrs. Meyer quitclaimed the Empire Way property to her husband "including any interest therein which grantor may hereafter acquire". Mrs. Meyer argues that the "after acquired interest" clause conflicts with community property law, which recognizes a right of reimbursement for community funds used to improve the separate property of one of the spouses. We do not see any conflict. The language in the deed does not differentiate between after acquired community interests and after acquired separate interests. It is broad enough to include both. Mrs. Meyer has not cited any decision or statute which exempts after acquired community interests of the grantor from the effect of such clauses. We hold the language of the deed controls. The trial court properly refused to recognize any community lien in the Empire Way property.

In any event, Mrs. Meyer failed to prove community funds were contributed to either the Empire Way property or the real estate contracts. On the contrary, the record shows Mr. Meyer had sufficient separate funds to make the payments. *See In re Estate of Kruse,* 52 Wn.2d 342, 346, 324 P.2d 1088 (1958). Specifically, the three contracts netted $450 per month. The facts support the trial court's judgment as it relates to the Empire Way property and the contracts.

■ Third, Mrs. Meyer contends the court erred when it ordered her to pay Ms. Moore cash for her one-half of the separate property. In her view, the order is tantamount to requiring one heir to buy the assets of the other heir. While the court's order is unusual, we hold it was proper under the circumstances. Certainly, the applicable law does not prohibit it. RCW 11.76.050 provides:

> The court may, upon such final [distribution] hearing, partition among the persons entitled thereto, the estate held in

common and undivided, and designate and distribute their respective shares; or *assign the whole or any part of said estate to one or more of the persons entitled to share therein. The person or persons to whom said estate is assigned shall pay or secure to the other parties interested in said estate their just proportion of the value thereof as determined by the court from the appraisement, or from any other evidence which the court may require.*

If it shall appear to the court at or prior to any final hearing that the estate cannot be fairly divided, then the whole or any part of said estate may be sold or mortgaged in the manner provided by law for the sale or mortgaging of property by personal representatives and the proceeds thereof distributed to the persons entitled thereto as provided in the final decree.

The court shall have the authority to make partition, distribution and settlement of all estates in any manner which to the court seems right and proper, to the end that such estates may be administered and distributed to the persons entitled thereto.

(Italics ours.)

Finally, we reject both parties' request for attorney fees on appeal. In light of the result, Ms. Moore has not established a basis for awarding her attorney fees on appeal.

■ Mrs. Meyer requests attorney fees under RCW 4.84-.150. That statute provides:

**Costs against fiduciaries.** In [an] action prosecuted or defended by an executor, administrator, trustee of an express trust, or a person expressly authorized by statute, *costs shall be recovered as in an action by or against a person prosecuting in his own right,* but such costs shall be chargeable only upon or collected of the estate of the party represented, unless the court shall direct the same to be paid by the plaintiff or defendant personally, for mismanagement or bad faith in such action or defense.

(Italics ours.) The purpose of RCW 4.84.150 is to allow for costs out of the estate in actions in which the named party is acting on behalf of the estate. If the personal representative acts in self–interest, the estate is not being represented. *See In re Estate of Thompson,* 156 Wash. 486, 488, 287 P. 21 (1930). Here, Mrs. Meyer, not the estate, benefits from her defense of Ms. Moore's challenges to her petition for distribution. We therefore deny Mrs. Meyer attorney fees on appeal.

The judgment of the Superior Court that the personal representative include the joint account in the inventory of the estate's assets is reversed. The remainder of the judgment is affirmed.

GREEN, A.C.J., and SHIELDS, J., concur.